**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:24-cv-00762-REB**

**SAMANTHA MOODY,**
**AMERICAN IMMIGRANT INVESTOR ALLIANCE,** and
**IT SERVICE ALLIANCE**,

       Plaintiffs,

v.

**ALEJANDRO MAYORKAS**, *in his official capacity as Secretary*,
United States Department of Homeland Security; and
**UR M. JADDOU**, *in her official capacity as Director*,
United States Citizenship and Immigration Services

       Defendants.

---

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, AND REQUEST FOR STAY**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... *ii*

NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND
REQUEST FOR STAY .................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

   I.  INTRODUCTION ................................................................................................. 2

   II.  STATUTORY AND FACTUAL BACKGROUND .................................................. 4

      A.  The Employment-Based Fifth Preference Visa and Its Lengthy Processing
          Times .............................................................................................................. 4

      B.  The Reform and Integrity Act of 2022 ........................................................... 6

      C.  The Proposed Rule ........................................................................................ 8

   III.  LEGAL STANDARD .......................................................................................... 10

   IV.  ARGUMENT ....................................................................................................... 11

      A.  Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims. ............. 11

          1.   The Final Rule is Contrary to Law ...................................................... 11

          2.   The Final Rule is Contrary to the 2022 Reform and Integrity Act ....... 13

      B.  The Final Rule Will Irreparably Harm Plaintiffs .............................................. 14

      C.  The Balance of Equities and Public Interest Factors Tip Sharply in Plaintiffs'
          Favor ............................................................................................................ 16

      D.  A Universal Injunction is Necessary .............................................................. 17

      E.  The Final Rule is Not Severable ..................................................................... 17

   V.  CONCLUSION .................................................................................................... 18

      CERTIFICATE OF SERVICE

      CERTIFICATE OF COMPLIANCE

## **TABLE OF AUTHORITIES**

## **CASE LAW**

*Am. Fed. of Gov't Emps. v. FLRA*,
   470 F.3d 375 (D.C. Cir. 2006) ------------------------------------------------------------------- 14

*Carlson v. Postal Regulatory Comm'n*,
   938 F.3d 337 (D.DC. 2019) -------------------------------------------------------------------- 17

*Cloud Peak Energy Inc. v. United States DOI*,
   415 F. Supp. 3d 1034 (D. WY 2019)------------------------------------------------------------ 11

*Da Costa v. Immigr. Inv. Program Off.*,
   80 F.4th 330 (D.C. Cir. 2023)-------------------------------------------------------------------4, 8

*East Bay Sanctuary Covenant v. Barr*,
   964 F.3d 832 (9th Cir. 2020)--------------------------------------------------------------- 16, 17

*Free the Nipple-Fort Collins v. City of Fort Collins*,
   916 F.3d 792 (10th Cir. 2019) ------------------------------------------------------------------ 10

*Greater Yellowstone Coal. v. Flowers*,
   321 F.3d 1250 (10th Cir.2003) --------------------------------------------------------------- 11, 15

*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2003)---------------------------------------------------------------- 11, 15

*High Country Conservation Advocates v. United States Forest Serv.*,
   951 F.3d 1217 (10th Cir. 2020) ----------------------------------------------------------------- 13

*Idaho v. Coeur d'Alene Tribe*,
   794 F.3d 1039 (9th Cir. 2015) ------------------------------------------------------------------ 15

*Immigrant Legal Res. Ctr. v. Wolf*,
   491 F. Supp. 3d 520 (N.D. Cal. 2020)--------------------------------------------------------- 17

*Int'l Rehabilitative Scis. Inc. v. Sebelius*,
   688 F.3d 994 (9th Cir. 2012)-------------------------------------------------------------------- 14

*IRS v. FLRA,*
   963 F.2d 429 (D.C.Cir.1992)-------------------------------------------------------------------- 14

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281(1988) ----------------------------------------------------------------------- 17, 18

*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social & Rehab. Servs.*,
   31 F.3d 1536 (10th Cir. 1994) ------------------------------------------------------------ 14, 15

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) --------------------------------------------------------------- 16

*Lyons v. USCIS*,
   2023 WL 144879 (S.D.N.Y. Jan. 10, 2023) --------------------------------------------------- 7

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ----------------------------------------------------------------------- 2, 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.* Co.,
   463 U.S. 29 (1983) ------------------------------------------------------------------2, 8, 13, 14

*Mysaev v. United States Citizenship & Immigr. Servs.*,
   2022 U.S. Dist. LEXIS 126477 (N.D. Tex. 2022) ---------------------------------------- 13

*Nken v. Holder*,
   556 U.S. 418 (2009) ----------------------------------------------------------------------- 2

*Ohio Oil Co. v. Conway*,
   279 U.S. 813 (1929) ----------------------------------------------------------------------- 15

*Panorama Consulting Sols., LLC v. Armitage*,
   2017 U.S. Dist. LEXIS 232262, 2017 WL 11547493 (D. Colo. June 9, 2017)--------- 16

*Sami Al Karim v. Holder*,
   2010 U.S. Dist. LEXIS 30030 (D. Colo. March 29, 2010)----------------------------------- 13

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ----------------------------------------------------------------------- 12

*Wyandotte Nation v. Nat'l Indian Gaming Comm'n*,
   437 F. Supp. 2d 1193 (D. Kans. 2006)------------------------------------------------------ 12,13

## FEDERAL LAW

5 U.S.C. § 705 -------------------------------------------------------------------------------------- 1, 17

5 U.S.C. § 706 ------------------------------------------------------------------------------------------- 2

5 U.S.C. § 706(2)(A) ------------------------------------------------------------------------------- 11

8 U.S.C. § 1153(b)(5),1186b -------------------------------------------------------------------- 4, 13

8 U.S.C. § 1153(b)(5)(E)(i) --------------------------------------------------------------------------- 5

8 U.S.C. § 1571(b)--------------------------------------------------------------------------------------- 13

*Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies*
   *Appropriations Act, 1993,*
   Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874-75 (1992) ----------------------------4, 9

*EB-5 Reform and Integrity Act of 2022 (RIA),*
   Pub. L. No. 117-303, §136 Stat. 49 (Mar. 15, 2022) -------------------------------- 1, *passim*

*Immigration Act of 1990,*
   Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978 ----------------------------------------------- 4

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 65(b) ------------------------------------------------------------------------------- 10

## FEDERAL REGISTER

81 Fed. Reg. 73292,  73309 (Oct. 24, 2016)---------------------------------------------------- 6

85 Fed. Reg. 46788, 46854 (Aug. 3, 2020)----------------------------------------------------- 7

88 Fed. Reg. 402 *et seq* (Jan. 4, 2023) ---------------------------------------------------3, 9, 10

88 Fed. Reg. at 424 -------------------------------------------------------------------------------- 18

88 Fed. Reg. at 557 ---------------------------------------------------------------------------------- 9

89 Fed. Reg. 6194 (Jan. 31, 2024)---------------------------------------------------------------- 3

89 Fed. Reg. at 6198-6205-----------------------------------------------------------------------6, 9

89 Fed. Reg. at 6212-------------------------------------------------------------------------- 11,12

89 Fed. Reg. at 6239------------------------------------------------------------------------------------ 9, 10

89 Fed. Reg. at 6286------------------------------------------------------------------------------------- 12

89 Fed. Reg. at 6286-87 ------------------------------------------------------------------------------ 2, 10

89 Fed. Reg. at 6287----------------------------------------------------------------------------------- 12

89 Fed. Reg. 20101 (Mar. 21, 2024)---------------------------------------------------------------1, 3

### ADMINISTRATIVE POLICIES

*EB-5 Immigrant Investor Process, U.S. Citizenship and Immigration Services*,
https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-process ----------------- 5

*Form I-956F, Application for Approval of an Investment in a Commercial Enterprise,*
*U.S. Citizenship and Immigration Services*,
https://www.uscis.gov/i-956f-------------------------------------------------------------------------------- 5

*EB-5 program reauthorization failed in Senate with one vote short, eb5investors.com,*
https://www.eb5investors.com/blog/eb5-visa-reauthorization-failed/------------------------- 7

*Historic Average Processing Times*,
https://egov.uscis.gov/processing-times/historic-pt------------------------------------------------ 7

*Current Processing Times,*
 https://egov.uscis.gov/processing-times/historic-pt ---------------------------------------------- 7

*Check Case Processing Times,*
https://egov.uscis.gov/processing-times/------------------------------------------------------------- 9

**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR STAY**

TO ALL PARTIES AND THEIR COUNSEL: PLEASE TAKE NOTICE Plaintiffs hereby move for a temporary restraining order against Defendants, pursuant to Rule 65 of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 65.1.

Plaintiffs seek a temporary restraining order maintaining the status quo until this Court can review the meritorious claims under the Administrative Procedure Act ("APA"). *See* ECF 1 (Complaint). In their three count Complaint, Plaintiffs raise specific challenges to the process used to change fees, the institution of new fees charged to businesses in employment-based petitions/applications to fund asylum, and the increase of fees by 100% or more for immigrant investors and Regional Centers. ECF 1 ¶¶ 157-191. The fee changes announced in the Federal Register on January 31, 2024, are scheduled to become effective on April 1, 2024. *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 89 Fed. Reg. 6194 (Jan. 31, 2024), *as corrected*, 89 Fed. Reg. 20101 (Mar. 21, 2024) ("Final Rule").

The evidence and arguments herein demonstrate Plaintiffs are likely to show the Final Rule arbitrarily, capriciously and unlawfully imposes fees in violation of the EB-5 Reform and Integrity Act of 2022, Pub. L. No. 117-303, 136 Stat. 49 (Mar. 15, 2022) ("RIA"). ECF 1 at ¶ 7, 81-96, 176; 5 U.S.C. § 705. In the RIA, Congress required DHS to complete a fee study on or before March 15, 2023, and then correlate the new fees for EB-5 related petitions and applications to processing times for the adjudication of EB-5-related benefit applications (referred to herein as "performance-based fees"). RIA § 106(a), (b). Defendants admit the performance-based fee study, due March 15, 2023,

was not done. 89 Fed. Reg. at 6286-87. Defendants' Final Rule did not create performance-based fees, but rather raised fees based on an "ability to pay" model.

Plaintiffs move for a temporary restraining order on the basis that: (1) they are likely to succeed on the merits of their claim that the EB-5 investor-related fees in the Final Rule are not severable, and the entire rule must be set aside under the APA, 5 U.S.C. § 706; (2) Plaintiffs are likely to suffer imminent and irreparable harm absent relief;  (3) the balance of equities tip in their favor and (4) the public interest weigh heavily in favor of maintaining the status quo. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).

Plaintiffs' Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; the supporting declarations and exhibits filed concurrently herewith; the proposed order; and such further evidence and argument as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The resolution to this motion hinges on how the Court answers this question: did Congress intend for DHS to consider a performance-based fee study prior to raising EB-5 related fees? *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins*. Co., 463 U.S. 29, 43 (1983) ("Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

This case challenges a Final Rule that was promulgated in violation of clear and unambiguous statutory language demanding an EB-5 performance-based fee study be completed prior to an increase in fees. As such, the Final Rule arbitrarily, capriciously, and unlawfully increases fees to apply for immigration benefits. *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 89 Fed. Reg. 6194 (Jan. 31, 2024), *as corrected*, 89 Fed. Reg. 20101 (Mar. 21, 2024) ("Final Rule").[1]  Defendants did not act in accordance with the RIA and did not complete a fee study on or before March 15, 2023. DHS, by and through USCIS, instead imposed new fees for immigrant investors and Regional Centers (hereinafter "EB-5 Filers") which are not correlated to processing times as Congress demanded. ECF 1 at ¶¶ 81-85, 94-96. On this basis alone, the Final Rule should be temporarily enjoined.[2]  The Final Rule calculates fees for all immigration application benefits and uses a redistributive ability to pay model, charging substantially more for visa categories used by businesses and investors that subsidizes the other categories of benefit applications.

The Final Rule will cause imminent and irreparable harm to Plaintiff American Immigrant Investor Alliance ("AIIA") and Plaintiff Moody because the fees charged to EB-5 Filers in violation of law will not be recoverable under the APA. *See* **Exhibit A Declaration of Samatha Moody**; **Exhibit B Declaration of Kanishka Malik**; **Exhibit C Declaration of Ishaan Khanna**. Investors, like Ms. Moody and the constituents of AIIA,

---

[1] The Notice of Proposed Rulemaking ("NPRM") is found at U.S. Citizenship and immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 88 Fed. Reg. 402 et seq (Jan. 4, 2023).

[2] The complaint consists of three counts. Plaintiffs' instant motion for a temporary restraining order addresses only one count, leaving the remainder of the causes of action available for judicial review in the normal course.

will suffer immediate and irreparable harm that cannot be remedied by later resolution of the case in their favor. *Id*.

The balance of harms and public interest factors also tip sharply in Plaintiffs' favor. Any harm to the government from maintaining the *status quo* is minimal. The public will be harmed if the Final Rule takes effect because it will excuse executive overreach that unabashedly violates clear requirements created by Congress. For these and other reasons, the Court should maintain the *status quo* and either enjoin the Final Rule or stay its effective date pending the final outcome of this case.

## II.     STATUTORY AND FACTUAL BACKGROUND

### A.     The Employment-Based Fifth Preference Visa and Its Lengthy Processing Times

The employment-based, fifth preference immigrant visa is commonly known as the EB-5 visa. Created first in 1990, this is "an employment-based visa program for noncitizens who invest in a job-creating enterprise." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 334 (D.C. Cir. 2023) (citing Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978, 4989 (codified at 8 U.S.C. § 1153(b)(5)). Two years after the inception of the EB-5 program, which was based on a direct investment of capital by an immigrant investor, Congress further "created an additional path to qualify for an EB-5 visa through what is now called the Regional Center Program. Under the Regional Center Program, EB-5 petitioners 'pool[ ] their investments with 1 or more qualified immigrants' into 'a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment.'" *Id*. at 335 (*citing* Departments of Commerce, Justice, and

State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874-75 (1992); 8 U.S.C. § 1153(b)(5)(E)(i)).

For immigrant investors, EB-5 immigration is a three-step process: (1) the filing of a preference petition (Form I-526 or Form I-526E), (2) the acquisition of two-year conditional residency by securing an immigrant visa abroad with the Department of State or adjusting status with USCIS, and (3) removal of conditions of residency through the filing of Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status. *See, e.g.*, *EB-5 Immigrant Investor Process*, U.S. Citizenship and Immigration Services, available at https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-process (last accessed Mar. 24, 2024). In order for business entities to become designated by Regional Centers, they must file Form I-956, Application for Regional Center Designation. In order for designated Regional Centers to be able to offer qualifying job-creating projects to potential investors, they must file Form I-956F, Application for Approval of an Investment in a Commercial Enterprise. *See, e.g.*, *Form I-956F, Application for Approval of an Investment in a Commercial Enterprise*, U.S. Citizenship and Immigration Services, available at https://www.uscis.gov/i-956f (last accessed Mar. 24, 2024). Additional form filings are required for Regional Center employees' background checks, annual certification, and other matters. *See, e.g.,* RIA § 103(b)(1).

EB-5 related applications and petitions already boast some of, if not the, highest fees across USCIS' entire product lines. However, through the Final Rule, USCIS proposes to raise these fees even higher:

| Form | Current Fee | Final Rule New Fee | Percentage of Increase |
|---|---|---|---|
| I-965G Regional Center Annual Statement | $3,035 | $4,470 | 47% |
| I-956 Regional Center Designation Application | $17,795 | $47,695 | 168% |
| I-956F Application for Approval of an Investment in a Commercial Enterprise | $17,795 | $47,695 | 168% |
| I-829 Petition by Investor to Remove Conditions | $3,750 | $9,525 | 154% |
| I-526/I-526E Immigrant Petition by Standalone/Regional Center Investor | $3,675 | $11,160 | 204% |

89 Fed. Reg. at 6198-6205 (Table 1).

However, despite such hefty fees, USCIS has been oft-criticized for slow EB-5 processing times. Indeed, during the agency's last *successful* rulemaking in 2016, the agency had acknowledged in the context of more than doubling Form I-526 fees that "[s]everal commenters objected to the proposed increases, noting that these are some of the highest proposed fee increases, while the related benefit requests have some of the longest processing times." 81 Fed. Reg. 73292,  73309 (Oct. 24, 2016). The agency expressed its commitment to "improving operational efficiencies while enhancing predictability and transparency in the adjudication process" by raising Form I-526 fees to the present $3,675 from then $1,500. *Id*. at 73311. It promised to "process Form I–526 filings as soon as practicable." *Id*.

But the opposite happened. Form I-526 processing times jumped from an average of 16.0 months in Fiscal Year 2016, to 31.1 months in Fiscal Year 2020, to 52.0 months as of February 28, 2024. USCIS now claims an I-526 case is not delayed unless

it has been pending longer than 55.5 months.[3] For Form I-829, median processing times jumped from 14.9 months in FY 2016, to 24.8 months in FY 2020, to 44.3 months as of February 28, 2024. *Id.* The present I-829 80th percentile of Form I-829 processing times is 61 months. *Id.*

Since at least 2012, USCIS stated publicly that its goal for I-526 adjudications was six months or less. *See Lyons v. USCIS*, No. 21-CV-3661 (JGK), 2023 WL 144879, at *3 (S.D.N.Y. Jan. 10, 2023). Further, USCIS' obligated goal for I-829 processing was 90 days. 85 Fed. Reg. 46788, 46854 (Aug. 3, 2020).

### B.    The Reform and Integrity Act of 2022

In June 2021, Congress let the EB-5 Regional Center Program – which had been subject to legislative extensions since its inception – expire. *See EB-5 program reauthorization failed in Senate with one vote short,* eb5investors.com, available at https://www.eb5investors.com/blog/eb5-visa-reauthorization-failed/ (Jun. 24, 2021; last accessed Mar. 24, 2024). It remained dormant for approximately nine months. During that time, many stakeholders (including Plaintiff AIIA) took part in lobbying and negotiations to resuscitate the program. Exhibit C (Khanna) at ¶ 11.  After months of negotiations, Congress stepped in to pass the RIA. Congress sought more than to just resuscitate the EB-5 visa, it required USCIS to fix its abysmal processing times.

In the RIA, Congress required a performance-based fee study for the adjudication of EB-5 related benefits to be completed "[n]ot later than 1 year after the

---

[3] USCIS' presentation of processing times is, likely by design, confusing. Historic *average* processing times can be found at https://egov.uscis.gov/processing-times/historic-pt (last accessed Mar. 24, 2023). However current processing times are, for some reason, published within the 80th percentile and available via a dropdown menu at https://egov.uscis.gov/processing-times/.

date of the enactment of this Act." RIA § 106(a), (b). Accordingly, the deadline was March 15, 2023. *Id.* Within 60 days after the fee study Congress also directed USCIS to adjust the fees it charges "to achieve efficient processing."  *Id*. Specifically, Congress created a condition precedent requiring USCIS to set new fees for services provided under the EB-5 program "at a level sufficient to ensure the full recovery <u>only</u> of the costs of providing such services, including the cost of attaining the goal of completing adjudications, on average, not later than" 90 to 240 days, depending on the nature of the petition. *Id*. at § 106(b) (emphasis added). In passing the RIA, Congress intended the agency to consider the performance-based fee study prior to increasing fees. *See State Farm,* 463 U.S. at 43.

The RIA was the first major immigration legislation to be passed in a decade, and the history of the Act shows the seriousness and intent of Congress to reign in the agency's ballooning processing times. *See, e.g., Da Costa,* 80 F.4th at 344 (discussing "troubling backlog of petitions waiting for USCIS adjudication" and USCIS' "increasingly sluggish pace of adjudication").

A year transpired between the passage of the RIA (March 15, 2022) and publication of the NPRM (January 4, 2023), during which time the agency devoted its time and attention to implementing its redistributive ability to pay model of fees, and did not prioritize, or comply with, the RIA's fee study requirement. Despite a statutory deadline demanding an EB-5 fee study be completed by March 15, 2023, DHS, and its bureau, USCIS, have produced no such study or plan to correlate performance-based fees to processing times.

In the Final Rule, USCIS concedes that it intends to impose substantially higher new fees on immigrant investors and regional centers without completion of the fee study and statutory principles of the RIA. 89 Fed. Reg. at 6239. For example, the fee for a Form I-526/526E Immigrant Petition by Standalone/Regional Center will rise from $3,675 to $11,160, a 204% increase, but there is no corresponding justification that aligns with Congress's intent to align fees with processing times. *Id.* at 6198 (Table 1).

### C.    The Proposed Rule

In the Proposed Rule, DHS admitted that it had not complied with the performance-based fee study required by the RIA. 88 Fed. Reg. at 420. DHS stated:

> [D]espite the changes in the law and program, DHS has proposed fees in this rule based on the currently projected staffing needs to meet the adjudicative and administrative burden of the Immigrant Investor Program Office pending the fee study required by section 106(a) of the EB-5 Reform and Integrity Act of 2022.

88 Fed. Reg. at 557. Yet, Congress instructed USCIS to set the Forms I-526/I-526E fees to cover "the cost of completing adjudications, on average, not later than . . . 240 days after receiving a petition." RIA at § 106(b)(4).

Since the passage of the RIA in March 2022, USCIS has yet to publish Form I-526E processing times, indicating it does not know the quantum of resources needed to clear the existing case load. *See Check Case Processing Times,* U.S. Citizenship and Immigration Services, available at https://egov.uscis.gov/processing-times/ (last accessed Mar. 19, 2024) (showing no data for Form I-526E). DHS "propose[d] new fees for the EB-5 program forms in this rule using the full cost recovery model . . that we have used to calculate those fees since the program's inception and not the fee study parameters and processing time frames required by the EB-5 Reform and

Integrity Act of 2022." 88 Fed. Reg. at 420. The agency did not consider the

Congressionally mandated processing time to fee analysis. 89 Fed. Reg. at 6239. DHS

stated:

> The EB-5 Reform and Integrity Act of 2022 requires DHS to
> conduct a fee study not later than 1 year after the date of the
> enactment of this Act and, not later than 60 days after the
> completion of the study, set fees for EB-5 program related
> immigration benefit requests at a level sufficient to recover
> the costs of providing such services, and complete the
> adjudications within certain time frames. *See* Public Law
> 117-103, sec. 106(b). DHS has begun the fee study required
> by the EB-5 Reform and Integrity Act of 2022 and has
> initiated a working group to begin drafting the rule. However,
> that effort is still in its early stages.

*id.*; *see also* 89 Fed. Reg. at 6286-87. The Final Rule's fee increases did not consider

Congress's methodology to set the fees or conduct the fee study that was due March

15, 2023. *Id*.

## III.   LEGAL STANDARD

A party seeking a temporary restraining order also must demonstrate clearly, with

specific factual allegations, that immediate and irreparable injury will result in the

absence of a temporary restraining order[4]. Fed. R. Civ. P. 65(b). To meet this burden,

---

[4] Plaintiffs do not seek a disfavored injunction. The Tenth Circuit applies a heightened

standard for "[d]isfavored preliminary injunctions," which do not:

> merely preserve the parties' relative positions pending trial. Instead, a
> disfavored injunction may exhibit any of three characteristics: (1) it
> mandates action (rather than prohibiting it), (2) it changes the status quo,
> or (3) it grants all the relief that the moving party could expect from a trial
> win. To get a disfavored injunction, the moving party faces a heavier
> burden on the likelihood-of-success-on-the-merits and the balance-of-
> harms factors: She must make a strong showing that these tilt in her favor.

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir.
2019) (citations and internal quotation marks omitted).

courts typically consider four factors; (1) is plaintiff likely to succeed on the merits, (2) is plaintiff likely to suffer irreparable harm in the absence of preliminary relief, (3) does the balance of equities tip in his or her favor, and (4) is an injunction in the public interest. *Monsanto*, 561 U.S. at 156-57; *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003). A plaintiff's harm in an APA case is irreparable when they show that no claim for financial loss can be made. *Cloud Peak Energy Inc. v. United States DOI*, 415 F. Supp. 3d 1034, 1042-43 (D. WY 2019), quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir.2003) ("An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.").

## IV.    ARGUMENT

### A.    Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims.

#### 1.    The Final Rule Is Contrary to Law

The Final Rule should be set aside because it is not in accordance with law. 5 U.S.C. § 706(2)(A). First, the Final Rule violates the RIA by setting fees without using the statutory processing time to fee analysis ("performance-based fee study"). The Final Rule arbitrarily imposes fee increases. The fees are now structured to expropriate fees from employment-based petitioners and EB-5 Filers by allocating increases to fees well in excess of the 26.37% increase (or lower) applied for other categories of immigration benefit petitions and applications. 89 Fed. Reg. at 6212. For immigrant investors, fees will rise 100% or more. *Id*. DHS "believes that this combination of limiting certain fee increases for policy reasons, setting fees using the ABC model, and adjusting fees by inflation, in addition to being responsive to public comments, provides a logical,

reasonable, and balanced approach. For the proposed rule, and consistent with past fee rules, DHS used its discretion to limit some proposed fee increases that would be overly burdensome on applicants, petitioners, and requestors if set at activity-based costing (ABC) model output levels." *Id.* Thus, the agency intends to redistribute funds in excess of the cost of adjudication paid by investors and shift those increased fees to subsidize favored categories of immigration benefits.

The Final Rule also imposes these dramatic increases despite DHS's failure to complete the statutorily required performance-based fee study for EB-5 investors on or before March 15, 2023. Comments to the proposed rule identified that DHS must complete the fee study prior to resetting fees. 89 Fed. Reg. at 6286. DHS admitted that it ignored the RIA's deadline for the fee study but claims Congress did not intend for the performance-based study to be a condition precedent to increasing EB-5 fees. *Id.* at 6287. The agency's claim that Congress permitted it to repeatedly raise fees without conducting the performance-based fee study is contradicted by the plain language of RIA § 106 (a), (b), and (c). Notably, subsection (c) limits the agency's discretion to raise fees in excess of those that were to be set by subsections (a) and (b). The final rule sidesteps the provisions of the RIA and cannot be reconciled with Congress' intent to have a fee study completed by March 15, 2023, with fee then tied to performance. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 485 (2001) ("The [agency] may not construe the statute in a way that completely nullifies textually applicable provisions meant to limit its discretion."), and *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, 437 F. Supp. 2d 1193, 1206 (D. Kans. 2006) (invalidating an agency regulation that effectively nullified a section of the statute).

The RIA did not use aspirational or equivocal language when creating the performance-based fee increases, instead Congress stated the agency *shall* conduct the study no later than one year from the law's implementation. § 106(a). In passing the RIA, Congress displayed a clear and unequivocal intent for the agency to increase fees based upon the performance-based fee study. *See State Farm,* 463 U.S. at 43. When Congress desires to grant wide discretion to the agency it places clearly nonbinding language in the statute. *See e.g., Mysaev v. United States Citizenship & Immigr. Servs*., NO. 3:22-CV-0371-B, 2022 U.S. Dist. LEXIS 126477, *14, (N.D. Tex. 2022) (the sense of Congress in 8 U.S.C. § 1571(b)'s "in six month completion language was aspirational and not an explicit deadline"); *Sami Al Karim v. Holder*, No. 08-cv-00671-REB, 2010 U.S. Dist. LEXIS 30030, *10 (D. Colo. March 29, 2010) (holding that language in 8 U.S.C. § 1571(b) was a "normative expectation" but not binding).

     **2.**     **The Final Rule is Contrary to the 2022 Reform and Integrity Act.**

Here Congress directed that "[n]ot later than 1 year after the date of the enactment of this Act, the Director of U.S. Citizenship and  Immigration Services shall complete a study of fees charged in the administration of the program described in sections 203(b)(5) and 216A of the Immigration and Nationality Act (8 U.S.C. 1153(b)(5) and 1186b)." RIA § 106(a), 136 STAT. 1103-1104. When Congress requires an agency to perform a particular analysis, a failure to do so is arbitrary and capricious. *High Country Conservation Advocates v. United States Forest Serv.,* 951 F.3d 1217, 1227 (10th Cir. 2020) (noting that the NEPA required a particular analysis and completion of an agency action was arbitrary and capricious because the agency failed to perform the analysis). It would strain credulity to suggest that the performance-based fee study was

not a factor Congress intended the agency to consider when drafting a fee regulation. *See State Farm,* 463 U.S. at 43.

DHS has disregarded legislative intent to set EB-5 related fees at a rate that aligns with specific processing times. RIA § 106(a), (b). The Final Rule abandons these principles without adequate justification. *See Am. Fed. of Gov't Emps. v. FLRA*, 470 F.3d 375, 380 (D.C. Cir. 2006) ("Certainly, if the result reached is 'illogical on its own terms,' the [action] is arbitrary and capricious.") (quoting *IRS v. FLRA,* 963 F.2d 429, 439 (D.C.Cir.1992). DHS deviates from the legislative model without giving any logical basis for doing so, and thus the Final Rule is arbitrary and capricious. *See Int'l Rehabilitative Scis. Inc. v. Sebelius*, 688 F.3d 994, 1001 (9th Cir. 2012) (holding "agency inconsistency is impermissibly arbitrary" when "an agency provides no explanation at all for a change in policy, or when its explanation is so unclear or contradictory that we are left in doubt as to the reason for the change in direction") (internal citation omitted).

### B.    The Final Rule Will Irreparably Harm Plaintiffs

The Final Rule will likely irreparably harm Plaintiffs. In the APA context, a plaintiff may establish irreparable harm by showing the violative action creates harm for which remedial claims are prohibited by law. *Kan*. *Health Care Ass'n, Inc. v. Kan. Dep't of Social & Rehab. Servs*., 31 F.3d 1536, 1543-44 (10th Cir. 1994). The quantum of harm required need not establish imminent bankruptcy or the imminent financial demise of a plaintiff. *Id.*

Controlling circuit precedent establishes that the economic harm constitutes irreparable harm in APA cases where recovery of monetary damages is not allowed.

14

*Heideman*, 348 F.3d at 1189 (quotation and citation omitted); *see also Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (holding that paying an allegedly unconstitutional tax when state law did not provide a remedy for its return constituted irreparable injury in the event that the statute were ultimately adjudged invalid); *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir.2003) ("An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.") (quotation and emphasis omitted).

Irreparable injury is imminent here because Plaintiff AIIA's constituency includes individuals who will be paying for and filing Forms I-829, Petition by Investor to Remove Conditions on Permanent Residence. A member of AIIA, Kanishka Malik, has declared that he will be filing this form and legally must pay the increased fee on or after April 15, 2024 or face removal from the United States. Exhibit B, Declaration of Kanishka Malik, ¶ 11; Exhibit C, Declaration of Ishaan Khanna at ¶¶ 8 and 9 (establishing Malik is a member of its organization). *See also* 8 CFR 216.6(a)(5)(requiring USCIS to terminate permanent residency and initiating removal proceedings against EB-5 investors who do not file Form I-829).

The Final Rule will imminently take fees in excess of law and once done, the fees will not be recoverable. See Exhibit B (Malik), ¶¶ 13-14; Exhibit A (Moody) ¶ 9. This will harm Ms. Moody, but also the constituencies and AIIA itself.  Exhibit C (Khanna) ¶¶ 16-21. Thus, the standard for irreparable harm has been met here through showing that USCIS intends to start charging investors, like Ms. Moody and AIIA constituents, on April 1, 2024, in violation of law. *Kan. Health Care Ass'n*, 31 F.3d at 1543; *see also*

*Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) ("[T]he Tribe's sovereign immunity likely would bar the State from recovering monetary damages incurred during the course of this litigation" and therefore "the district court did not err in determining that the State would likely suffer irreparable harm."); *East Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 854 (9th Cir. 2020) ("Economic harms may be irreparable because plaintiffs are otherwise unable to recover monetary damages.").

> **C. The Balance of Equities and Public Interest Factors Tip Sharply in Plaintiffs' Favor**

The balance of the equities tip in Plaintiffs' favor and an injunction is in the public interest. Any harm to the government from maintaining the *status quo* is minimal and not irreparable. Enjoining the Final Rule on a preliminary basis would not prevent Defendants from proposing a new rule to increase fees in a lawful and rational manner. There is also no legitimate government interest in propounding a rule that violates the law. *See, e.g.*, *Panorama Consulting Sols., LLC v. Armitage*, 2017 U.S. Dist. LEXIS 232262, 2017 WL 11547493, at *4 (D. Colo. June 9, 2017) (balance of hardships weighed in plaintiff's favor "not least because any temporary injunctive relief provided will merely require the relevant former employees and LTA to comply with the law and/or observe their agreements with plaintiff"). A temporary restraining order will serve the public interest as there is no public interest served in expropriating fees from individuals and businesses in violation of federal law. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.") (internal citation omitted); *East Bay Sanctuary Covenant*, 964 F.3d at 855 (9th Cir. 2020) (public interest is served "by ensuring that statutes enacted by their

representatives are not imperiled by executive fiat.") (internal citation omitted). With regard to the most dramatic fee increases levied on immigrant investors and Regional Centers, the Final Rule ignores Congress's requirement of a fee study and implementation of fees in accordance with certain benchmarks tied to processing times. The balance of equities and public interest would not be served through the institution of fees enacted by fiat with blatant disregard to federal law. *Id*.

### D. A Universal Injunction is Necessary

The Court should universally enjoin the rule in its entirety to maintain the status quo until the Court fully considers the merits. Under the APA, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, ..., may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The Final Rule significantly alters immigration policy, and "cases implicating immigration policy have a particularly strong claim for uniform, nationwide relief." *East Bay Sanctuary Covenant,* 964 F.3d at 857) (internal quotations and citations omitted and citing cases); *Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 547-48 (N.D. Cal. 2020) (setting aside a 2020 attempt to raise fees universally and entirely). The Court should conclude the record demonstrates that universal relief is warranted.

### E. The Final Rule is Not Severable

Although the Final Rule claims that each portion of the regulation is severable, the reality establishes that the rule cannot be broken into pieces. Consequently, this Court should remand the entire rule to the agency. "[T]he APA permits a court to sever

a rule by setting aside only the offending parts of the rule." *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 351 (D.DC. 2019) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294, (1988). Courts look at two factors when determining the severability of a portion of a regulation. *Id.* "First, the court must find that 'the agency would have adopted the same disposition regarding the unchallenged portion [of the regulation] if the challenged portion were subtracted. *Id.* (internal citation omitted). Second, the parts of the regulation that remain must be able to 'function sensibly without the stricken provision.'" *Id.* (internal citation omitted). Defendants can satisfy neither of these requirements.

As noted in the NPRM, the Final Rule reverses the methodology the agency used to establish fees as recently as 2020. 88 Fed. Reg. at 424. That rule utilized a "beneficiary pays" model (*e.g.,* each beneficiary pays the actual anticipated cost of adjudicating their application). *Id.* The new Final Rule replaces that standard with the redistributive "ability to pay" model. *Id.* "Under the ability to pay principle, those who are more capable of bearing the burden of fees pay more for the service than those with less ability to pay."  *Id.*

 The rapacious increase in fees across the EB-5 processes was intended to subsidize fees for other categories the agency intended to adjudicate below cost. Thus, if the EB-5 fees are vacated, the intended surplus caused by the redistribution would not exist, and the agency would once again engage in rulemaking.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a preliminary injunction (a) preventing Defendants and their agents from implementing or

enforcing the Final Rule, and (b) ordering Defendants to preserve the status quo pending adjudication of this dispute on the merits. Plaintiffs also request this Court to stay the effectiveness of the Final Rule.

Dated: March 25, 2024                                    Respectfully submitted,

*/s/ Jonathan D. Wasden*
Jonathan D. Wasden
Wasden Law
9427 Goldfield Lane
Burke, VA 22015
Phone: (843) 872-4978
Email: jon@wasden.law

*/s/ Jesse M. Bless*
Jesse M. Bless
Bless Litigation LLC
6 Vineyard Lane
Georgetown MA 01833
Phone: (781) 704-3897
Email: jesse@blesslitigation.com

*/s/ Matthew T. Galati*
Matthew T. Galati
The Galati Law Firm, LLC
8080 Old York Road, Suite 225
Elkins Park, PA 19027
Phone: (215) 310-0231
Email: matt@galati.law

*Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

Undersigned counsel certify that on March 25, 2024, the forgoing motion was filed through the Court's CM/ECF system, which will transmit an email notification and electronic hyperlink of that filing to the Court. As the United States Attorney's Office for the District of Colorado has not made an appearance in the case a copy of the foregoing will be served on their office by certified mail. Additionally, a copy of the foregoing will be provided to the civil Chief via email at: kevin.traskos@usdoj.gov as well as U.S. Department of Justice attorney, Madeline M. McMahon at: Madeline.M.McMahon@usdoj.gov.

**CERTIFICATE OF COMPLIANCE**

Pursuant to D.C.COLO.LCivR 7.1, Counsel for the Plaintiffs certify that they met and conferred on March 22, 2024, via a Zoom Meeting with attorneys Madeline M. McMahon and Cynthia F. Liao, from the Department of Justice. Defendants, via counsel, objected to the motion.

March 25, 2024                                        Respectfully Submitted,

                                                    */s/ Jonathan D. Wasden*
                                                    Jonathan D. Wasden
                                                    Wasden Law

                                                    */s/ Jesse M. Bless*
                                                    Jesse M. Bless
                                                    Bless Litigation LLC

                                                    */s/ Matthew T. Galati*
                                                    Matthew T. Galati
                                                    The Galati Law Firm, LLC