UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| SAMANTHA MOODY, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary, United States Department of Homeland Security, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 1:24-cv-00762-CNS<br><br>Judge Charlotte N. Sweeney |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION**
**FOR TEMPORARY RESTRAINING ORDER, ECF No. 9 (Mar. 25, 2024)**

i

## INTRODUCTION

The EB-5 visa program provides a pathway for non-citizens who invest significant sums in U.S.-based commercial enterprises—around $1 million—to obtain lawful permanent residence. Like many immigration benefits, EB-5 visa petitions involve fees, and months ago, the U.S. Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS") promulgated a comprehensive final rule ("Rule" or "Final Rule"), after full notice and comment, that restructured its filing fees related to the EB-5 program and many other programs used by millions of petitioners and applicants.

Now, on the eve of the effective date of the agency's comprehensive fee restructuring, two EB-5 investors rush before this Court and seek a temporary restraining order ("TRO"), claiming that they will suffer "irreparable harm" if the Rule goes into effect Monday, April 1, 2024, as scheduled, because the Rule charges an additional $5,775 in filing fees for one particular EB-5 form they intend to file, Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status. There are no grounds for entering such an extraordinary eleventh-hour order. Among other deficiencies in their filing, Plaintiffs rely on just two EB-5 investors—Plaintiff Samantha Moody and non-plaintiff declarant Kanishka Malik—to attempt to establish their claims of irreparable harm, but neither must immediately file any immigration forms subject to the Rule. Malik does not need to file his Form I-829 until July 2024, and Moody does not need to file her Form I-829 until *two years from now* in 2026. In any event, it strains credulity that the additional filing fee would inflict irreparable harm—which in the Tenth Circuit must be "certain" and "great," not "merely serious or substantial"—on investors who, by statute, must invest hundreds of thousands of dollars to even be eligible to file Form I-829.

1

Further, despite only challenging the EB-5 provisions of the Rule, Plaintiffs seek to enjoin the entire Rule. Such a broad injunction would be incongruous with the express severability provision of the Rule and is grossly out of proportion to the singular and remote harms two individuals allege here. The Rule provides funding for USCIS, an agency that is 96% fee funded, to process immigration benefit requests for millions of people. The Rule adjusts roughly 100 fees for applications and petitions across many different immigration benefits unrelated to EB-5 and codifies fee waivers and exemptions for low-income and vulnerable populations. A TRO is supposed to be an equitable remedy, but granting a TRO here would be manifestly inequitable. Accordingly, Plaintiffs' request for a TRO should be denied.

## BACKGROUND

USCIS is almost entirely funded by fees.[1] Congress authorized DHS to charge fees for adjudication and naturalization services at a level to "ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants and other immigrants," and "at a level that will recover any additional costs associated with the administration of the fees collected." 8 U.S.C. § 1356(m). In addition, 31 U.S.C. § 902 requires the Chief Financial Officer of each agency, including DHS, to "review, on a biennial basis, the fees . . . imposed by the agency for services . . . it provides, and make recommendations on revising those charges to reflect costs incurred by it in providing those services."

USCIS duly reviewed its fees for the FY 2022/2023 biennial period and determined that its fees did not recover the full costs of services provided. "Most of the fees [had] not changed since 2016 despite increased costs of federal salaries and inflation costs for other goods and

---

[1] In FY 2021, 96% of USCIS's funding came from fees. U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 89 Fed. Reg. 6,194, 6,195 (Jan. 31, 2024) ("Final Rule").

2

services." Final Rule, 89 Fed. Reg. at 6,195. Consequently, in January 2023, USCIS issued a proposed rule to adjust fees for almost all of its forms, related to many different immigration requests, ranging from employment-based visa petitions to adoption to genealogy record requests. U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 88 Fed. Reg. 402 (Jan. 4, 2023) ("NPRM"). After the notice-and-comment period, USCIS issued the Final Rule on January 31, 2024, with an effective date of April 1, 2024. Final Rule, 89 Fed. Reg. 6,194.

One of many employment-based visas covered by the Rule is the EB-5 program, which permits noncitizens to apply for lawful permanent resident status in the United States by making an investment of $1,050,000 ($800,000 for certain geographic areas or projects) in a U.S.-based new commercial enterprise that creates at least ten jobs for United States workers. 8 U.S.C. § 1153(b)(5)(A), (C).[2] A prospective EB-5 investor must first submit a Form I-526, Immigrant Petition by Standalone Investor. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 336 (D.C. Cir. 2023); 8 C.F.R. § 204.6(a) (Jul. 24, 2019). Upon approval of the Form I-526, an investor physically present in the United States can apply for two-year conditional lawful permanent resident status using Form I-485, Application to Register Permanent Residence or Adjust Status. *Da Costa*, 80 F.4th at 336; 8 U.S.C. § 1186b(a)(1); 8 C.F.R. §§ 216.1, 245.2(a)(3). If granted conditional lawful permanent resident status, during the 90 days before the two-year period expires, the investor may file a Form I-829 to remove the conditions on their permanent resident status. 8 U.S.C. § 1186b(d)(2); 8 C.F.R. § 216.6(c). On the Form I-829, the investor must

---

[2] Before the EB-5 Reform and Integrity Act was enacted in 2022, Pub. L. No. 117-103, Div. BB, 136 Stat. 1070, the required amount was $1,000,000, or $500,000 for certain rural areas or areas with high unemployment. 8 U.S.C. § 1153(b)(5)(B)-(C) (2022); 8 C.F.R. § 204.6(f) (Jul. 24, 2019).

3

demonstrate that he or she has "in good faith, substantially met the capital investment requirement . . . and continuously maintained his or her capital investment over the two years of conditional residence." 8 C.F.R. § 216.6(a)(4)(iii).

On March 19, 2024, Plaintiffs filed the Complaint in this action. ECF No. 1. On March 25, 2024, Plaintiffs filed the instant motion for a temporary restraining order "preventing Defendants and their agents from implementing or enforcing the Final Rule." Pls.' Mot. at 18-19, ECF No. 9.

## ARGUMENT

A temporary restraining order or preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted); *see also GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule.") (citation omitted). The party seeking preliminary relief must demonstrate each of four factors: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 19-20 (2008)). Factors (3) and (4) are considered together where, as here, the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**I. Plaintiffs fail to demonstrate that they face imminent irreparable harm if the Rule goes into effect.**

Among these factors, "a showing of probable irreparable harm is the single most important prerequisite" for a preliminary injunction or temporary restraining order and "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of

4

an injunction will be considered." *Dominion Video Satellite v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260-61 (10th Cir. 2004) (citation omitted). The party seeking the "temporary restraining order must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order." *Anderson v. U.S. Army Corps of Engineers*, 2005 WL 1606907, at *1 (D. Colo. July 8, 2005) (citing Fed. R. Civ. P. 65(b)). To constitute irreparable harm, an injury must be "certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation omitted). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). And the injury must be "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citation omitted); *see also RoDa Drilling Co.*, 552 F.3d at 1210 ("Purely speculative harm will not suffice, but rather, a plaintiff . . . [must] show a significant risk of irreparable harm . . . to have satisfied his burden.") (citation omitted).

Plaintiffs have failed to put forth any evidence of imminent harm that would justify the extraordinary relief they seek here. Plaintiffs have not identified a single individual who would even be affected by the Rule on April 1, let alone who would immediately suffer harm that is both "certain" and "great." *See Heideman*, 348 F.3d at 1189. Moody concedes that she does not need to file a Form I-829 and pay any corresponding fees until February 20, 2026—nearly *two years* from now. Pls.' Mot. Ex. A ¶ 9 (Moody Decl.), ECF No. 9-1.[3] "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter*, 555 U.S. at 22

---

[3] Plaintiff Moody also complains of processing times for various forms that she filed in the past and that have already been adjudicated in her favor. Moody Decl. ¶¶ 3-5, 7. She claims that she has "significant apprehension and anxiety" about further "delays in my immigration journey," *id.* ¶¶ 8, 12-13, but Plaintiffs do not challenge processing delays in this suit, *see* Compl. ¶¶ 157-191 (challenging Final Rule regarding fees), and "a bare allegation of anxiety is not a cognizable, concrete injury," *Garland v. Orlans, PC*, 999 F.3d 432, 439 (6th Cir. 2021). Accordingly, these complaints are irrelevant.

5

(citation omitted). Moody has no basis to assert that she is entitled to a last-minute TRO enjoining a Rule that will have no impact on her for two years.

Likewise, Plaintiff American Immigrant Investor Alliance ("AIIA") has fallen far short of demonstrating that it will suffer any harm in absence of a TRO. In their brief, Plaintiffs identify a single AIIA member, Kanishka Malik, who they claim "will be filing" a Form I-829 and "legally must pay the increased fee on or after April 15, 2024 or face removal from the United States." Pls.' Mot. at 21. But Plaintiffs' brief blatantly misrepresents Malik's declaration, which states that he "must thereby file [his] Form I-829 by July 14, 2024," not April 15. *Id.* Exhibit B ¶ 12 (Malik Decl.), ECF No. 9-2. While his window to file a Form I-829 *opens* on April 15, he is not required to file the form for over three months. 8 U.S.C. § 1186b(d)(2). To the extent Malik wishes to file his Form I-829 before July 14, he may do so, but he need not, and Plaintiffs cannot "manufacture" injury "by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Further, Plaintiffs have not shown that Malik is likely to face any imminent risk of removal; ordinarily, a hearing process would precede any removal order. *See* 8 U.S.C. § 1186b(c)(2)(B). Even if he did face such a risk, the Supreme Court has held that removal is not "categorically irreparable." *Nken*, 556 U.S. at 435 (explaining that removal was not categorically irreparable in a case where individual sought asylum based on his fear of political persecution in his home country); *see also Gomez v. Holder*, 2014 WL 841573, at *2 (D. Colo. Mar. 4, 2014). In sum, any harm to Plaintiffs "is both too speculative and too remote to justify issuance of a temporary restraining order" by

6

April 1. *A.K. by & through Moyer v. Cherry Creek Sch. Dist. No. 5*, 2020 WL 2197920, at *2 (D. Colo. May 6, 2020).[4]

Further, Plaintiffs' delay in requesting emergency relief until mere days before the Rule goes into effect undercuts any claims of irreparable harm. In assessing a request for preliminary injunctive relief, the Court must consider the timing of the motion, as delay implies that a plaintiff has not in fact suffered irreparable harm. *GTE Corp.*, 731 F.2d at 678 ("Delay . . . undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."). Plaintiffs have known about the effective date of the final rule since January 31, 2024, but have chosen to file this TRO one week before the rule went into effect. Plaintiffs offer no explanation for waiting until the last minute to file suit. "An unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013); *see also Vita-Mix Corp. v. Tristar Prod., Inc.*, 2008 WL 11383504, at *8-9 (N.D. Ohio Sept. 30, 2008) (noting the "wealth of case law" holding that a delay in seeking injunctive relief "undermines [a] belated assertion of irreparable harm"); *Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Hum. Servs.*, 17 F.4th 793, 805 (8th Cir. 2021) ("Without question, '[a] long delay by plaintiff after learning of the threatened harm ... may be taken as an

---

[4] Plaintiffs insist that the increased Form I-829 fees will inflict irreparable harm because economic harm is unrecoverable. Pls.' Mot. at 14-16. But Plaintiffs are free to file a suit for money damages to recover these fees in the Court of Federal Claims. *See ITServe All., Inc. v. Cuccinelli*, 502 F. Supp. 3d 278, 284-85 (D.D.C. 2020) (explaining that cases in which plaintiffs claim they have paid unlawful fees to USCIS are "properly before the Court of Federal Claims"); *see also Astakhov v. USCIS*, 2023 WL 6479080, at *6 (D.D.C. Oct. 5, 2023) (holding that either the Tucker Act or Little Tucker Act permitted the plaintiff to recover "a monetary award refunding the fees she paid" USCIS as a filing fee to apply for employment authorization). Because "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies," *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981), Plaintiffs' argument that loss of fees amounts to irreparable harm should be rejected.

7

indication that the harm would not be serious enough to justify a preliminary injunction.'") (quoting Wright & Miller, 11A Fed. Prac. & Proc., § 2948.1 & n.13 (3d ed. 2013)); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding a ten-week delay in seeking an injunction for trademark infringement undercut the claim of irreparable harm).

**II.    The balance of harms and public interest factors heavily favor the government.**

A TRO is a form of equitable relief, and granting a TRO here manifestly would be inequitable. Plaintiffs fail to show that the remote, speculative harm they have alleged would outweigh the harm an injunction would inflict on the government and the public. Enjoining the entire Rule, as Plaintiffs demand, would cost USCIS approximately $3.1 million in revenue each day,[5] slowing adjudications of both EB-5 petitions as well as dozens of other immigration benefit requests affecting millions of individuals seeking benefits ranging from naturalization to visas for adopted children to genealogy records. *E.g.*, 89 Fed. Reg. at 6,376 ("Given current filing volume considerations, DHS requires additional revenue to prevent immediate and significant cuts in planned spending," which could cause "longer processing times, a degradation in customer service, and reduced efficiency over time."). The Rule's codification of fee waivers for low-income families or expanded fee exemptions for victims of trafficking or domestic violence, U.S. Armed Forces service members, and Afghan or Iraqi interpreters who worked for the U.S. government would also be delayed. *E.g.*, *id.* at 6,213-14, 6,232-33. Further, many petitioners may have already incurred costs in preparing benefit requests using the new forms that were published with the Rule, in anticipation of filing them beginning April 1. *See* 88 Fed. Reg. at 560 (proposing revisions to numerous forms); 89 Fed. Reg. at 6,333 (responding to public comments on the Rule's form

---

[5] *See* 89 Fed. Reg, 6,207 and Table 3 (stating that "DHS revises the estimated cost and revenue differential to $1,141.5 million in this final rule.") $1.141.5 million divided by 365 calendar days equals $3,127,397.26.

changes). If the Rule is enjoined at the eleventh hour, confusion is likely to follow regarding which form version and fees to submit, which may lead to rejections for improperly filed requests and negative ramifications for those trying to obtain or retain lawful status. Any distant, minor harm to Plaintiffs is heavily outweighed by the greater harmful impacts on the United States and to others who submit immigration benefit requests.

**III.     Defendants reserve all arguments on the merits of Plaintiffs' claims.**

Because Plaintiffs' last-minute request for a temporary restraining order has put Defendants and this Court on an extraordinarily short timeline, Defendants do not here address the merits of Plaintiffs' claims, except to note that the RIA issue Plaintiffs raise in their motion was carefully considered and addressed by DHS in the Final Rule. 89 Fed. Reg. at 6,286-87. Defendants plan to respond in full to Plaintiffs' claim at a later stage of the litigation.

As discussed above, if a plaintiff fails to meet its burden on any of the four requirements for a temporary restraining order, its request must be denied. *See, e.g.*, *Chem. Weapons Working Grp. v. U.S. Dep't of Army*, 111 F.3d 1485, 1489 (10th Cir. 1997) (failure on the balance of harms "obviat[ed]" the need to address the other requirements). And that is clearly the case here.

**IV.     Any relief granted should be narrowed to cover only the Form I-829 fees of the two EB-5 investors.**

Finally, notwithstanding Plaintiffs' myriad failures to demonstrate entitlement to relief, if the Court does grant temporary relief, that relief should apply only to Moody and Mailk's Form I-829 fees. *See* 5 U.S.C. § 705 (relief pending review available only "to the extent *necessary* to prevent irreparable injury" (emphasis added)); *cf. Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 177 (D.D.C. 2021) (denying a preliminary injunction of the parts of an immigration-related fee rule for which plaintiffs failed to establish irreparable harm). "The Court's constitutionally prescribed role is to vindicate the individual rights of the

people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018). Thus, the "plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Id*. at 1934; *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162-64 (2010); *Printz v. United States*, 521 U.S. 898, 935 (1997). Injunctions must be no broader than "necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). The only injury Plaintiffs have identified is the additional $5,775 that Moody and Malik would pay when filing Form I-829. *See* Moody Decl. ¶¶ 8-12; Malik Decl. ¶ 12. AIIA has not identified any members impacted by Form I-829 or other fee increases, much less any imminent, irreparable harm to itself as an organization. Accordingly, the universal injunction that Plaintiffs seek is entirely inappropriate.

Plaintiffs claim that the rule is not severable, Pls.' Mot. at 17-18, but "regulations—like statutes—are presumptively severable: If parts of a regulation are invalid and other parts are not, [courts] set aside only the invalid parts unless the remaining ones cannot operate by themselves or unless the agency manifests an intent for the entire package to rise or fall together." *Bd. of Cnty. Commissioners of Weld Cnty., Colorado v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023). Here, DHS clearly intends for the Rule to be severable, as it included a severability clause. 8 C.F.R. § 106.6 ("The provisions of this part are separate and severable from one another."). Where, as here, a regulation contains a severability clause, "the judicial inquiry is straightforward." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020). "At least absent extraordinary circumstances"—and Plaintiffs have not identified any—"the Court should adhere to the text of the severability . . . clause." *Id.*

Plaintiffs do not dispute that DHS intended for the rule to be severable. Pls' Mot. at 17 (acknowledging Final Rule's "claim[] that each portion of the regulation is severable"). Rather,

10

their sole argument against severability is that the EB-5 fee increases were "intended to subsidize fees for other categories," and that without the EB-5 fees, "the intended surplus caused by the redistribution would not exist." Pls.' Mot. at 18. But DHS is in the best position to determine whether the rest of the Rule can function without the I-829 fee increase, not Plaintiffs. As DHS has explained:

> [I]f DHS were prohibited from collecting any new fee for any reason, DHS believes this rule is structured so that a stay, injunction or vacatur of a fee set by this rule could be narrowly tailored to remedy the specific harm that a court may determine exists from the specific fee or fees challenged. USCIS would be able to continue operations, perhaps at a reduced level or by shifting resources in the absence of the fee until DHS is able to conduct new rulemaking to re-set fees and correct the deficiencies that resulted in the court order. Operating without one or a few of the new fees would be preferable to an invalidation of all the new fees, which would [cause] great disruption and deterioration of USCIS operations.

89 Fed. Reg. at 6,237.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a temporary restraining order.

Dated: March 28, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Cynthia Liao*
CYNTHIA LIAO (CA Bar No. 301818)
MADELINE MCMAHON (DC Bar No. 1720813)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. N.W.
Washington, DC 20005

11

Tel: (202) 531-1325
Fax: (202) 616-8470
cynthia.f.liao@usdoj.gov

*Counsel for Defendants*