IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

**Civil Action No. 1:24-cv-00762-CNS**

**SAMANTHA MOODY,** *et al.,*

    Plaintiffs,

v.

**ALEJANDRO MAYORKAS**, *et al.,*

    Defendants.

---

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER, ECF No. 15 (March 28, 2024)**

## INTRODUCTION

The Executive has a duty to <u>faithfully</u> execute the laws. *See* U.S. Const. art. II, § 3. *Little v. Barreme*, 6 U.S. (2 Cranch) 170, 177-78, 2 L. Ed. 243 (1804) (stating that, because the President has the "high duty . . . to 'take care that the laws be faithfully executed,'" he must enforce a law in accordance with congressional commands where Congress has "prescribed . . . the manner in which [the] law shall be carried into execution"); *see Morrison v. Olson*, 487 U.S. 654, 689-90 (1988) ("The analysis contained in our removal cases is designed . . . to ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II.") (emphasis added) (footnote omitted). In accordance with this duty, "an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). Our Constitution's system of separation-of-powers, as entrusted by Congress, provides federal courts with the inherent and statutory authority to halt unlawful actions of an executive agency. *Kendall v. United States*, 37 U.S. 524, 613 (2021) ("To contend that the obligation imposed on the President to see the laws faithfully executed, implies *a power to forbid their execution*, is a novel construction of the constitution, and entirely inadmissible.") (emphasis added). The motion for a temporary restraining order seeks to prevent a violation of federal law by the Department of Homeland Security ("DHS"), and its sub agency, the United States Citizenship and Immigration Services ("USCIS"). It may be the Eleventh Hour, but justice is not something that is time constrained.

1

## DISCUSSION

DHS seeks to implement a nationwide rule that increases fees for immigration benefits starting on April 1, 2024. *See U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 89 Fed. Reg. 6194 (Jan. 31, 2024), as corrected, 89 FR 20101 (Mar. 21, 2024) ("Final Rule"). The final rule violates federal law and Plaintiffs seek a temporary restraining order to postpone the effective date of the rule. ECF 9 (Plaintiffs' "Motion"). Through the Administrative Procedure Act, Congress has entrusted district courts to halt such abuses of executive power because all abuses of authority are irreparable and contrary to the public interest. 5 U.S.C. § 705. We all must yield to federal law, including the Executive, *Kendall*, 37 U.S. at 612-13, and this Court should temporarily halt the planned unlawful actions of Defendants.

**A. Defendants do not meaningfully contest that the Final Rule is unlawful**

The collection of EB-5 investor fees in the Final Rule[1] is contrary to law, and Defendants do not seriously contest this point, but instead claim any violation of law would not result in irreparable harm. ECF 15 (Defendants' Opposition). The attempt to violate federal law is imminent and failure to maintain the status quo will allow an administrative rule to essentially trump the plain language of a federal statute. Contrary to Defendants' claims, breaking federal law is irreparable and never in the public interest. Section 705 of the APA provides that when "an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent

---

[1] Used in this Reply as defined in Plaintiffs' Motion.

2

irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve the status quo or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. This Court should postpone the effective date of the Final Rule in accordance with the authority Congress entrusted federal judges under the Administrative Procedure Act.

**B. The balance of harms and public interest do not favor the government because the Final Rule is Illegal**

Here, Defendants cannot articulate a claim that enforcing an unlawful requirement is in the public interest. The Executive Branch:

> 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required.' *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015). That is because '[t]here is generally no public interest in the perpetuation of unlawful agency action.' *League of Women Voters v. Newby*, 838 F.3d 1, 12 (DC Cir. 2016). Rather, 'there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.' *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).

*TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 115 (D.D.C. 2020). In the Motion and Complaint, Plaintiffs have established that the Final Rule is unlawful as it sets fees without the mandatory fee study and without tying the fees to the timelines Congress provided. ECF 1, 9.  Defendants have not meaningfully contested these arguments. Because there can be no legitimate governmental interest in acting unlawfully, this Court should find the balance of equities and the interests of the public weigh heavily in Plaintiffs' favor.

### C. The harms to Plaintiffs are imminent and irreparable

Defendants claim that there is no harm to Plaintiff AIIA. In so doing, they completely fail to address the organizational harm. *See* Immigrant Legal Res. Ctr. v. Wolf, 491 F. Supp. 3d 520, 544 (N.D. Cal. 2020) ("Organizations may establish irreparable harm by showing 'ongoing harms to their organizational missions.'") (internal citation omitted). Co-founder of AIIA, Ishaan Khanna, provided a declaration detailing the harm that his organization would face. *See* Declaration of Ishaan Khanna, ECF Doc 9-3, at ¶¶ 17, 19. These harms – to AIIA's reputation and its prospect for donations -- should be considered conceded. *See Cummings ex rel. J.C. v. Woodson Senior High Sch.*, 563 F.Supp.2d 256, 259 (D.D.C.2008) (failure to address the substance of a party's arguments is a concession).

Further, Defendants claim that because Plaintiff Moody and Mr. Malik do not *have* to file their Forms I-829 <u>on April 1</u>, there is no harm to them by allowing the fee rule going into effect. This argument is simply not supported by the law or common sense. It is well-established that plaintiffs "need not wait for "Damocles's sword ... to actually fall on them before the court will issue an injunction." *TikTok*, 507 F. Supp. 3d at 115 (*citing League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016) (cleaned up). Indeed, Mr. Malik details that his Form I-829 must be filed by July 14. Malik Declaration, ECF Doc. 9-2 at ¶12. The relevant regulation, cited in the Motion, plainly describes the consequences for failing to timely file the Form I-829:

> Termination of status for failure to file petition. Failure to properly file the petition to remove conditions within the 90–day period immediately preceding the second anniversary of the date on which the investor obtained lawful permanent residence on a conditional basis shall result in the automatic termination of the investor's permanent resident status and

> the initiation of removal proceedings. USCIS shall send a written notice of termination and a notice to appear to an investor who fails to timely file a petition for removal of conditions. No appeal shall lie from this decision; however, the investor may request a review of the determination during removal proceedings.

8 C.F.R. § 216.6(a)(5).

Furthermore, Mr. Malik prudently wishes to "file as early as possible in my I-829 filing window" as USCIS' mailroom is subject to long wait times and delayed issuance of a receipt. Malik Decl. at ¶13. This prudence is well-founded. For example, in 2021, the agency was subject to a class action by aggrieved F-1 students who were in danger of falling out of status because of mailroom delays. That litigation ended in a Consent Order whereby the agency finally agreed to comply with the law. *See Li v. USCIS*, 2:21-cv-00677-MHW-CMV, Doc. 13 (S.D. OH Jul. 23, 2021). An AIIA member, Mr. Malik should not need to wait until July 13, 2024, for a court to afford halt a fee increase that is unlawful. His Form I-829 filing window opens approximately two weeks after the Final Rule is slated to go into effect, which is sufficiently immediate and imminent for this Court to find irreparable harm to him as a member of AIIA.

Similarly, Plaintiff Moody need not wait for her window to open to suffer from the unlawful fee increases. The government implies that there is no irreparable harm because Plaintiff Moody, will not *be required* to file until 2026. ECF 15 at 5. Plaintiff AIIA represents immigrant investors seeking immigration benefits in addition to Ms. Moody. As such, AIIA has shown imminent and irreparable harm on behalf of its membership. *See Colo. Mont. Wyo. State Area Conf. of the NAACP v. United States Election Integrity Plan*, 2022 U.S. Dist. LEXIS 77471, *10 (D. Colo. 2022), citing *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021).

Defendants' other defense to irreparable harm is that persons who are forced to pay unlawful fees could file individual suits in the Federal Court of Claims. ECF 15, pg. 7, n.4. This argument is as callous as it is wrong. A future litigant seeking to recover the unlawful fees would spend more money and time advocating for their rights than they would receive from a judgment, resulting in a permanent and irreparable loss. *See TikTok Inc.*, 507 F. Supp. 3d at 115, *quoting League of Women Voters of U.S.*, 838 F.3d 1, 8–9 (D.C. Cir. 2016). Courts should not have to waste judicial resources to remedy violations of federal law capable of being enjoined. Thus, the government's insistence that victims of excessive takings in violation of federal law proves too much, as the harm is both imminent and incapable of full redress.

### D.  The Final Rule should not be severed and universally enjoined

Defendants seek to have this Court sever the investor-related fees promulgated in violation of the EB-5 Reform and Integrity Act of 2022, Pub. L. No. 117-303, 136 Stat. 49 (Mar. 15, 2022) ("RIA"). ECF 15, pg. 9. However, this is not tenable as the entire set of fees is modeled on the collection of all fees pooled together for the adjudication of all benefits. 89 Fed. Reg. at 6212. On its face, the rule requires EB-5 fees to avoid a catastrophic hole in the agency's budget. Allowing only a part of the Rule to become effective will undue the alleged miscalculations and alleged justifications for the entire schedule of fees. *Id*. Postponement of the entire rule until Defendants comply with federal law is the most appropriate temporary outcome given the violation of federal law (by completing a performance-based fee study) and serious questions raised about other fees scheduled to become effective. ECF 1 (Plaintiffs' Complaint).

Defendant's reliance on *Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 177 (D.D.C. 2021), misses the mark on whether severance is appropriate at this stage. In *Immigration Network,* the court enjoined selected fee increases in an Executive Officer for Immigration Review's ("EOIR") regulation. At the time of that Court considered whether to sever the rule, EOIR received less than 1% of its funding from application fees for its services.[2] The remainder of its funding came from the general treasury. *Id.* In contrast, USCIS is entirely funded by fees paid on applications for immigration benefits. In this case, the agency has relied on exorbitant EB-5 fees in the Final Rule as a necessity to subsidize its entire schedule of fees, exemptions and waivers.

The feasibility of severing the fees in *Immigration Network* was imminently more feasible given the miniscule impact on the overall budget posed by the unlawful fees. However, the Final Rule here seeks to implement a new set of fees, exemptions, and waivers based on projections that assumed collection of fees from investors. The design of the rule, which is based on a shared ability to pay model, makes a preliminary order to sever the EB-5 fees from the rule unworkable and unnecessary to maintain the status quo on a temporary basis before the parties and the court can fully review the merits of the claims presented.

Additionally, the TRO requested should not be afforded only to Plaintiff Moody and those AIIA's represents. After all:

> [T[he APA's § 705 must be read to authorize relief from agency action for <u>any person otherwise subject to the action</u>,

---

[2] USDOJ EOIR FY 2021 Congressional Budget Submission, at pg. 7 (accessed March 28, 2024, https://www.justice.gov/d9/pages/attachments/2020/02/09/eoir-fy2021cj-final3.5.20.pdf).

7

> not just as to plaintiffs. […] Section 705, which speaks in terms of the "agency action" and that action's "effective date," *id.*, plainly and simply "authorizes courts to stay agency rules pending judicial review," *Mexichem Specialty Resins, Inc.*, 787 F.3d at 562 (Kavanaugh, J., dissenting in part); *see also In re GTE Service Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) (recognizing that § 705 supplies "statutory authority to stay agency orders pending review in this court."); *see also, e.g.*, *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) (staying a final rule "in its entirety" across the country in a case brought by Texas, other state regulators, and private parties).

*D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 48 (D.D.C. 2020) (emphasis added). As the Court eloquently stated, "when a plaintiff proves that a rule was unlawfully promulgated, halting the rule's application to the plaintiff may lessen the real-world impact of the unlawful rule on the plaintiff but does not fully redress 'the violation established' — that is, the promulgation of an unlawful rule." *Id*. at 49.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a temporary restraining order (a) enjoining Defendants and their agents from implementing or enforcing the Final Rule, and (b) ordering Defendants to preserve the status quo pending adjudication of this dispute on the merits.

Dated: March 28, 2024                                    Respectfully submitted,

*/s/ Jonathan D. Wasden*
Jonathan D. Wasden
Wasden Law
9427 Goldfield Lane
Burke, VA 22015
Phone: (843) 872-4978
Email: jon@wasden.law

*/s/ Jesse M. Bless*
Jesse M. Bless
Bless Litigation LLC
6 Vineyard Lane

8

Georgetown MA 01833
Phone: (781) 704-3897
Email: jesse@blesslitigation.com

*/s/ Matthew T. Galati*
Matthew T. Galati
The Galati Law Firm, LLC
8080 Old York Road, Suite 225
Elkins Park, PA 19027
Phone: (215) 310-0231
Email: matt@galati.law

*Attorneys for the Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2024, the forgoing reply was filed through the Court's CM/ECF system, which will transmit an email notification and electronic hyperlink to that filing to the Court and the Notice of Electronic Filing will be transmitted to all parties by the CM/ECF system.

March 28, 2024                                                  Respectfully Submitted,

*/s/ Jonathan D. Wasden*
Jonathan D. Wasden
Wasden Law

9