IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-00762-CNS

SAMANTHA MOODY,
AMERICAN IMMIGRANT INVESTOR ALLIANCE, and
IT SERVICE ALLIANCE,

      Plaintiffs,

v.

ALEJANDRO MAYORKAS, in his official capacity as Secretary,
United States Department of Homeland Security; and
UR M. JADDOU, in her official capacity as Director,
United States Citizenship and Immigration Services,

      Defendants.

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order and Request for Stay. ECF No. 9. For the reasons explained below, the motion is DENIED.

### I. BACKGROUND

**A. Factual Background**

United States Citizenship and Immigration Services (USCIS) is almost entirely funded by fees. ECF No. 1 (Compl.), ¶ 39; ECF No. 15 (Defendants' Response). Congress authorized the United States Department of Homeland Security (DHS) to charge fees for adjudication and naturalization services at a level to "ensure recovery of

1

the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants and other immigrants," and "at a level that will recover any additional costs associated with the administration of the fees collected." 8 U.S.C. § 1356(m). Further, 31 U.S.C. § 902 requires the Chief Financial Officer of each agency to "review, on a biennial basis, the fees . . . imposed by the agency for services . . . it provides, and make recommendations on revising those charges to reflect costs incurred by it in providing those services." 31 U.S.C. § 902(a)(8).

Apparently, USCIS reviewed its fees for the FY 2022/2023 biennial period and determined that its fees did not cover the full costs of services provided, in part because "[m]ost of the fees [had] not changed since 2016 despite increased costs of federal salaries and inflation costs for other goods and services." Final Rule, 89 Fed. Reg. at 6,195; Compl., ¶ 46. Thus, in January 2023, USCIS issued a proposed rule to adjust fees for most of its immigration request forms, such as employment-based visa petitions. USCIS Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 88 Fed. Reg. 402 (Jan. 4, 2023); Compl., ¶ 56; ECF No. 15 at 3. After the notice-and-comment period, USCIS issued the Final Rule on January 31, 2024, with an effective date of April 1, 2024. Final Rule, 89 Fed. Reg. 6,194; Compl., ¶ 14.

One of the employment-based visas covered by the Final Rule is the EB-5 program, which permits noncitizens to apply for lawful permanent resident status by making an investment of $1,050,000 ($800,000 for certain geographic areas or projects) in a U.S.-based new commercial enterprise that creates at least 10 jobs for United States workers. ECF No. 15 at 4 (citing 8 U.S.C. § 1153(b)(5)(A), (C)). Prospective EB-5

2

investors must first submit a Form I-526, Immigrant Petition by Standalone Investor. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 336 (D.C. Cir. 2023) (citing 8 C.F.R. § 204.6(a)); Compl., ¶¶ 83–84. Upon approval of the Form I-526, an investor physically present in the United States can apply for two-year conditional lawful permanent resident status using Form I-485, Application to Register Permanent Residence or Adjust Status. *Da Costa*, 80 F.4th at 336; 8 U.S.C. § 1186b(a)(1); 8 C.F.R. §§ 216.1, 245.2(a)(3). If granted conditional lawful permanent resident status, during the 90 days before the two-year period expires, the investor may file a Form I-829 to remove the conditions on their permanent resident status. 8 U.S.C. § 1186b(d)(2); 8 C.F.R. § 216.6(c). On the Form I-829, the investor must demonstrate that he or she has "in good faith, substantially met the capital investment requirement . . . and continuously maintained his or her capital investment over the two years of conditional residence." 8 C.F.R. § 216.6(a)(4)(iii).

    B. The Plaintiffs

Plaintiff Samantha Moody is a citizen of Canada but resides in Telluride, Colorado. Compl., ¶ 17. She is an EB-5 investor and holds conditional permanent residency. *Id.* Pursuant to the terms of 8 U.S.C §1186b(d)(2)(B), Plaintiff Moody must file a Form I-829 within 90 days of the expiration of her conditional status on February 20, 2026. *Id.*; ECF No. 9-1 (Statement of Plaintiff Moody), ¶ 9 ("My deadline to submit Form I-829 is February 20, 2026.").

Plaintiff American Immigrant Investor Alliance (AIIA), founded in April 2021, is a Washington D.C.-based 501(c)(4) non-profit to inform, educate, and advocate on behalf of all EB-5 investors from around the world. Compl., ¶ 18. Plaintiffs identified a single AIIA

member, Kanishka Malik, who they allege will be filing a Form I-829. ECF No. 9-2 (Statement of Kanishka Malik). Malik is a citizen of India and holds a conditional permanent residency in the United States. *Id.*, ¶ 1. Malik immigrated to the United States as an EB-5 investor. *Id.* Malik's must file her Form I-829 by July 14, 2024. *Id.*, ¶ 12.

Plaintiff IT Service Alliance (ITServe) is the nation's largest trade group representing small- and medium-sized information-technology companies. Compl., ¶ 19. Plaintiff ITServe has over 2,200 member companies and 21 chapters spread around the country. *Id.* ITServe's members rely on the H-1B visa to fill shortages of highly skilled workers in the IT sector of the economy. *Id.*

### C. Plaintiffs' Complaint and TRO

Plaintiffs filed their Complaint on March 19, 2024. Plaintiffs challenge the Final Rule's changes to fees charged for immigration benefits that are scheduled to become effective on April 1, 2024. Compl., ¶ 1. They argue that the Final Rule should be enjoined preliminarily and permanently because it was promulgated without appropriate notice and comment, arbitrarily forces businesses and individuals to fund asylum adjudications, and unlawfully imposes fee increases of 100% or higher on foreign investors seeking immigrant status based on the creation of jobs for United States workers without first completing a fee study Congress ordered prior to changing fees. *Id.*, ¶ 2.

On March 25, 2024, Plaintiffs filed their TRO, asking this Court to issue a preliminary injunction (a) preventing Defendants and their agents from implementing or enforcing the Final Rule, and (b) ordering Defendants to preserve the status quo pending

adjudication of this dispute on the merits. ECF No. 9 at 18–19. Plaintiffs also request this Court to stay the effectiveness of the Final Rule. *Id.* at 19.

As noted, Defendants promulgated the Final Rule in the Federal Register on January 31, 2024, and the Final Rule is scheduled to become effective on April 1, 2024. Compl., ¶¶ 1, 14, 19.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes courts to enter preliminary injunctions and issue TROs. Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to the court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933); *see also* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (3d ed. 2023) ("The issuance of a temporary restraining order is a matter that lies within the discretion of the district court."). The procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*,

787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). Of the four factors, "a showing of probable irreparable harm is the single most important prerequisite" for a preliminary injunction or temporary restraining order, and "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260–61 (10th Cir. 2004) (quotation and citation omitted).

## IV.  ANALYSIS

The Court has reviewed Plaintiffs' motion, reply, and the various exhibits attached to the motion, ECF Nos. 9, 16, and Defendants' response, ECF No. 15. For the reasons below, the Court finds that Plaintiffs have failed to meet their burden of showing that a TRO is warranted.

### A.  Irreparable Harm

"Irreparable harm" means that the claimed injury "must be both certain and great"; it is not enough to be "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (citation omitted). Generally, a harm is not irreparable when the losses may be compensated by monetary damages. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). The movant must show that the "injury complained of is of such *imminence* that there is a clear and present

need for equitable relief to prevent irreparable harm." *Id.* (citation omitted) (emphasis in original); *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (showing irreparable harm is "not an easy burden to fulfill").

Plaintiffs argue that the harm it will face on April 1, 2024—the increased fee schedule—will cause imminent and irreparable damage because the fees charged to EB-5 filers will not be recoverable under the APA. ECF No. 9 at 3–4, 14–16. For at least four reasons, the Court is not persuaded.

First, Plaintiffs have not shown that any alleged harm would be great. If the Final Rule takes effect on April 1, *and Plaintiff Moody and others like her actually pay the additional filing fees*, Plaintiff will pay an additional $5,775. ECF No. 9 at 6 (citing 89 Fed. Reg. at 6198-6205 (Table 1)). While that harm may be "substantial," that is not enough. *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250. The Court simply cannot say it is great, especially in comparison to the amount she invested. *See* Statement of Plaintiff Moody, ¶ 2 ("On or about April 15, 2019, . . . I invested $500,000 of my capital (i.e. cash) into the EB-5 New Commercial Enterprise Pathways ODP1, LLC.").

Second, Plaintiffs have not shown that any alleged harm is immediate. Plaintiff Moody's deadline to file her I-829 is almost *two years from now*. Statement of Plaintiff Moody, ¶ 9. And non-party Malik has until July 14, 2024. Statement of Kanishka Malik, ¶ 12. Although Malik may wish to file his I-829 early, he is not required to do so. It is well established that a plaintiff seeking a TRO cannot "manufacture" an injury "by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

7

Third, Plaintiffs have not shown that any alleged harm is unrecoverable. A cursory review of the authority cited by Defendants suggests that Plaintiffs may be able to recover monetary damages in the event Plaintiffs prevail on their claims. ECF No. 15 at 7 n.4; *see ITServe All., Inc. v. Cuccinelli*, 502 F. Supp. 3d 278, 284–85 (D.D.C. 2020) (where the plaintiffs claim they have paid unlawful fees to USCIS, such claims are "properly before the Court of Federal Claims"); *see also Astakhov v. USCIS*, 2023 WL 6479080, at *6 (D.D.C. Oct. 5, 2023) (holding that either the Tucker Act or Little Tucker Act permitted the plaintiff to recover "a monetary award refunding the fees she paid" USCIS as a filing fee to apply for employment authorization). In general, injuries that can be compensated by money damages are not irreparable. *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017) ("Although irreparable harm does not readily lend itself to definition, a plaintiff must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." (citations and quotations omitted)).

Fourth, Plaintiffs' unreasonable delay in filing their TRO weighs against the claim of imminent harm. As noted, USCIS issued the Final Rule on January 31, 2024, yet Plaintiffs waited until March 25, 2024, to file its TRO—exactly one week before the effective date. Plaintiffs offer no explanation for their delay except to say that, although the TRO "may be the Eleventh Hour, [] justice is not something that is time constrained." ECF No. 16 at 1. The Court finds that Plaintiffs' delay undercuts their claimed irreparable harm. *See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("Delay in seeking relief. . . undercuts the sense of urgency that ordinarily accompanies a motion for

preliminary relief and suggests that there is, in fact, no irreparable injury." (quotation and citation omitted)); *see also Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Hum. Servs.*, 17 F.4th 793, 805 (8th Cir. 2021) ("Without question, '[a] long delay by plaintiff after learning of the threatened harm . . . may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.'" (quoting Wright & Miller, 11A Fed. Prac. & Proc., § 2948.1 & n.13 (3d ed. 2013))); *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013) ("[A]n unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm."); *Vita-Mix Corp. v. Tristar Prod., Inc.*, No. 1:07 CV 275, 2008 WL 11383504, at *8–9 (N.D. Ohio Sept. 30, 2008) (noting that, "even if Plaintiff had demonstrated a substantial likelihood of success on the merits," the "wealth of case law" shows that a delay in seeking injunctive relief "undermines [a] belated assertion of irreparable harm").

In sum, Plaintiffs have failed to show that any harm is imminent, great, and irreparable. This factor weighs against injunctive relief.

### B. Balance of Hardships

"To be entitled to a preliminary injunction, the movant has the burden of showing that 'the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction'." *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1113 (D. Colo. 2021) (quoting *Heideman*, 348 F.3d at 1190).

Even reading Plaintiffs' motion liberally, the potential harm they allege does not outweigh the potential injury to Defendants should the Court grant the relief requested.

Plaintiffs argue without any support that "[a]ny harm to the government from maintaining the status quo is minimal and not irreparable." ECF No. 9 at 16. The Court disagrees.

Here, Plaintiffs argue that the Final Rule is not severable and thus a universal injunction is required. ECF No. 9 at 17. But Defendants say that enjoining the entire Final Rule would cost USCIS *approximately $3.1 million in revenue each day*. ECF No. 15 at 8. Additionally, the Court is persuaded by Defendants' argument that, if the Rule is enjoined at the eleventh hour, confusion is likely to follow regarding which form version and fees to submit, which may lead to rejections for improperly filed requests and negative ramifications for those trying to obtain or retain lawful status. *Id.* at 9. The likely adverse effect on other operations is also extremely high given that USCIS is almost entirely funded by the collection of fees. Plaintiffs offer no real response to these harms except to argue that the "Executive Branch: 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required.'" ECF No. 16 at 3 (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)). Despite this reasonable argument, the Court cannot say that the balance of harms favor granting the TRO.[1] This factor weighs against injunctive relief.

\* \* \*

Because the Court has found that Plaintiffs failed to prove two of the four TRO factors, it will not proceed to analyze the remaining two factors. Accordingly, Plaintiffs' request for injunctive relief is not warranted. *Vill. of Logan*, 577 F. App'x at 766.

---

[1] Though the Court faults Defendants for not addressing the "likelihood of succeeding on the merits" factor, *see* ECF No. 15 at 9, for the reasons stated above (namely Plaintiffs' unreasonable delay), Plaintiffs also are not without fault. In any event, Defendants' failure does not alter the Court's findings that Plaintiffs fail to establish at least two of the four TRO factors.

## V.  CONCLUSION

Consistent with the above analysis, Plaintiffs' Motion for Temporary Restraining Order and Request for Stay, ECF No. 9, is DENIED.

DATED this 29th day of March 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge