IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-00762-CNS

**SAMANTHA MOODY,**
**AMERICAN IMMIGRANT INVESTOR ALLIANCE,**
**and IT SERVICE ALLIANCE,**

    Plaintiffs,

v.

**ALEJANDRO MAYORKAS,** *in his official capacity as Secretary*, United States Department of Homeland Security; and
**UR M. JADDOU,** *in her official capacity as Director*, United States Citizenship and Immigration Services

    Defendants.

---

**PLAINTIFFS' REPLY BRIEF**

---

**TABLE OF CONTENTS**

I. American Immigrant Investor Alliance and IT Service Alliance Have Associational Standing ..................................................................................................1

    A.  IT Service Alliance .................................................................................... 1

    B.  American Immigrant Investor Alliance ...................................................... 2

II. Plaintiff Moody Has Standing ........................................................................... 5

III. The RIA Mandated A Fee Study and Fees Set To Efficient Processing of Benefits Under The EB-5 Program .................................................................. 6

IV. Using Gross Revenues to Assess Businesses "Ability To Pay" While Using Net Income To Assess Individuals "Ability To Pay" Fees and Businesses "Ability To Pay" Employees Was Arbitrary and Capricious.............................. 9

V. Vacatur is the Appropriate Remedy ................................................................ 12

CONCLUSION ............................................................................................................. 14

CERTIFICATE OF SERVICE ....................................................................................... 15

I. **American Immigrant Investor Alliance and IT Service Alliance Have Associational Standing**

The American Immigrant Investor Alliance ("AIIA") and IT Service Alliance ("ITServ") have associational standing to challenge to the Final Rule as to the fees that injure its membership. Organizations like AIIA and ITServ have "standing to bring suit on behalf of its members if (1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." *Speech First v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (*citing Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181, 120 S. Ct. 693 (2000)); *see also Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434 (1977).

**A. IT Service Alliance**

ITServ has standing to challenge the increased fees for H-1B nonimmigrant visas and the Asylum Program Fees that will be imposed on its members. ITServ is the nation's largest trade group representing small and medium sized information technology companies. Plaintiff ITServ has over 2,200 member companies and 21 chapters spread around the country. ITServ's members rely on the H-1B visa to fill shortages of highly skilled workers in the IT sector of the economy. Its members will be severely harmed by the increase in immigration application fees, which went into effect on April 1, 2024. ECF 1 ¶¶ 19, 113-28; ECF 23-3; Certified Administrative Record ("CAR"). [1]

Defendants have presented no evidence to rebut ITServ's members who are all

---

[1] Although ITServ's comment concerns a different rulemaking, the discussion of its membership is germane to, and establishes how, the Fee Rule will impact its 2200 members who are subject to the fees.  https://www.regulations.gov/comment/USCIS-2021-0010-7363 (*last accessed* November 22, 2024).

1

subject to the increase H-1B fees and Asylum Program Fee, which satisfies the familiar tripartite test for standing because (1) its members have "suffered an injury in fact"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992). To remove any doubt, ITServ has submitted a declaration showing that its members[2] have paid the increased H-1B fees and Asylum Program Fee that is challenged in this case. Exhibit A - Declaration of Jagadeesh Mosali at ¶ 8.

### B. American Immigrant Investor Alliance

AIIA has standing to challenge the increase fees the Final Rule imposes on immigrant investors. AIIA is not a traditional membership organization, like a labor union or professional association, and does not purport to be one. It nevertheless has standing because it is suing on behalf of its "members", like Kanishka Malik.[3] ECF 23-4; ECF 9-2 (Declaration of Mr. Malik).[4] Under the Final Rule, Mr. Malik expected the fees to remove the conditions on his permanent residency to remain at $3750 until USCIS completed a

---

[2] In Speech First, the circuit court held that an organization does not have to identify members by name to establish standing. Speech First, 92 F.4th at 950-52.

[3] Contrary to Defendants' claim, Mr. Malik confirmed that he had submitted a Form I-526 and was a conditional permanent resident. ECF 9-2 ¶¶ 5-6, 12-13.

[4] Both Mr. Malik and Ms. Moody are immigrant investors who filed an immigrant visa petition prior to the Final Rule and are subject to the Final Rule because each will need to pay increased fees to remove the conditions on their permanent residency after the Final Rule. ECF 9-2; ECF 23-2. Moreover, each has suffered an injury in fact due to the failure of USCIS to complete the fee study in the time mandated because the purpose of conducting the fee study was to set fees for the purposes of substantially reducing processing times, including those to remove the conditions on permanent residency. *The EB-5 Reform and Integrity Act of 2022*, Pub. L. No. 117-303, § 106, 136 Stat. 49 (Mar. 15, 2022)("RIA").

fee study. ECF 9-2 ¶ 14. Instead, he was required to pay $9,525 without receiving the intended benefit of expeditious processing times that Congress intended to result from the fee study. *The EB-5 Reform and Integrity Act of 2022*, See Div. BB of the Consolidated Appropriations Act of 2022, Pub. L. 117-103, §§ 106(a)-(b), 136 Stat. 49 (Mar. 15, 2022) ("RIA"). Defendants are fully aware that Mr. Malik filed his I-829 petition on or about June 17, 2024 and paid the higher fee – their arguments that this is somehow unclear are in bad faith given that they administer EB-5 filings. See Exhibit B - Redacted Receipt Notice.

USCIS's admitted failure to follow the RIA through completion of the fee study by March 15, 2023 has permitted USCIS to ignore Congress's intent to have fees set to a level that will ensure timely processing of EB-5 related filings. RIA §§ 106(a)-(b).[5] Section 106 of RIA provides, in pertinent part:

SEC. 106. TIMELY PROCESSING.

(a) Fee Study.— Not later than 1 year after the date of the enactment of this Act, the Director of U.S. Citizenship and Immigration Services shall complete a study of fees charged in the administration of the program described in sections 203(b)(5) and 216A of the Immigration and Nationality Act (8 U.S.C. 1153(b)(5) and 1186b).
(b) Adjustment of Fees To Achieve Efficient Processing.— Notwithstanding section 286(m) of the Immigration and Nationality Act (8 U.S.C. 1356(m)), and except as provided under subsection (c), the Director, not later than 60 days after the completion of the study under subsection (a), shall set fees for services provided under sections 203(b)(5) and 216A of such Act (8 U.S.C. 1153(b)(5) and 1186b) at a level sufficient to ensure the full recovery only of the costs of providing such services, including the cost of attaining the goal of completing adjudications, on average, not later than—
(1) 180 days after receiving a proposal for the establishment of a regional center described in section 203(b)(5)(E) of such Act;
(2) 180 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act;
(3) 90 days after receiving an application for approval of an investment in a

---

[5] For example, just days ago, counsel for Ur M. Jaddou, Director of USCIS, argued that Form I-829 petitions take "approximately 5 years" to adjudicate and implied that anything less is not considered "undue delay" and evidence of "the United States' diligence." *See Bijjula v. USCIS,* 3:24-cv-00441-MMD-CSD, ECF 16, 17 (D. Nev., Nov. 20, 21, 2024).

new commercial enterprise described in section 203(b)(5)(F) of such Act that is located in a targeted employment area (as defined in section 203(b)(5)(D) of such Act);
(4) 240 days after receiving a petition from an alien desiring to be classified under section 203(b)(5)(E) of such Act;
(5) 120 days after receiving a petition from an alien desiring to be classified under section 203(b)(5)(E) of such Act with respect to an investment in a targeted employment area (as defined in section 203(b)(5)(D) of such Act); and
(6) 240 days after receiving a petition from an alien for removal of conditions described in section 216A(c) of such Act.

RIA §§ 106(a)-(b).

It is not only USCIS's decision to increase fees for EB-5 petitions that has injured AIIA membership, but the failure to complete a fee study has allowed USCIS to ignore a secondary mandatory aspect of the law: achieving timely processing. As of today, USCIS adjudicates 80% of Form I-829s within 54.5 months, which is galaxies away from the 240-day average processing Congress intended in the RIA *once USCIS conducted its fee study*. *See* Processing time for Petition by Entrepreneur to Remove Conditions on Permanent Resident Status (I-829) at Immigrant Investor Program Office, https://egov.uscis.gov/processing-times/ (*last visited* Nov. 22, 2024); RIA § 106(b)(6).[6] To say members of AIIA, like Mr. Malik, suffer no injury from the failure of USCIS to complete the fee study and double fees untethered to efficient processing, is preposterous. ECF 26 at 19.

The Supreme Court in *Hunt* considered three criteria in determining whether the "nonmembership organization" sufficiently represented its constituents' interests to be able to bring suit on their behalf. *Hunt's* "indicia of membership" were whether the

---

[6] USCIS's online system will allow you to see current processing times for Form I-829 by using a dropdown menu to select Form I-829, Form Category, and Field Office or Service Center.

4

individuals play a role in selecting the organization's leadership, in guiding the organization's activities, and in financing the organization's activities. *Hunt*, 432 U.S. at 344-45. The declarations from AIIA's founding member, Ishaan Khanna, (ECF 9-3) and its member, Mr. Malik (ECF 9-2), satisfy the *Hunt* criteria for associational standing to challenge the EB-5 related fees because the "organization is sufficiently identified with and subject to the influence of those it seeks to represent." *See Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003); *see also Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999); *Flyers Rights Educ. Fund, Inc. v. United States DOT*, 957 F.3d 1359, 1362 (D.C. Cir. 2020). In addition, the litigation here is germane to [AIIA's] organizational purpose" and that the relief requested, an order setting aside rulemaking setting fees in violation of law, does not require participation by individual members. *Id*.; (*citing Hunt*, 432 U.S. at 343). The AIIA has satisfied the threshold to show associational standing to set aside the EB-5 fees pertinent to immigrant investors set forth in the Final Rule because they violate the RIA, which is an injury traceable to Defendants that this Court would redress from an order enjoining the fees until Defendants have satisfied the conditions precedent provided in the RIA.

## II. Plaintiff Moody Has Standing

To say I-829 applicants like Plaintiff Moody only suffer a single financial injury due to USCIS' unlawful implementation of the Fee Rule is an equally absurd claim. ECF 26 at 16. The delay Plaintiff Moody experienced is hardly unique, and the types of injuries that coincide with USCIS' delay and increased fees are concrete, from family separation due to inability to travel internationally to financial harm from the delayed recovery of their investment capital. Curiously, Defendants cite to the Sixth Circuit in an attempt to dismiss

Plaintiff Moody's anxieties about her Form I-829 process as "bare allegations," ignoring the facts to the contrary. In *Lujan v. Defenders of Wildlife,* the Supreme Court notes that an injury in fact must be "actual and imminent, not 'conjectural' or 'hypothetical'" and "'likely,' as opposed to merely 'speculative' that the injury will be "redressed by a favorable decision." 504 U.S. 555, 560 – 561 (1992). First, Plaintiff Moody's Declaration establishes that her concerns about adjudication delays and fee hikes are not hypothetical or speculative. They are grounded in her personal experience with delays and related harms that were only remedied after Plaintiff Moody sought judicial intervention. ECF 9-1, ¶¶ 3 – 8. Based on her experience and USCIS' own processing time data, it is more likely than not that Plaintiff Moody will face unreasonable delays and the harms that flow there from yet again. Further, the financial injury of paying the increased Form I-829 filing fee is actual and imminent. As Plaintiff Moody noted in her declaration, she has two "choices," either pay the increased fee when the time comes or face deportation and its associated financial and psychological costs. *Id*. at 14. This is very likely the kind of concrete injury this Court could prevent to Plaintiff Moody and similarly situated applicants. Plaintiff Moody established standing at the time of filing and still has standing today.

### III.  The RIA Mandated A Fee Study and Fees Set To Efficient Processing of Benefits Under The EB-5 Program

"Defendants recognize that the RIA directed the agency to complete an EB-5 fee study by March 15, 2023 and a fee rule 60 days later, and that the fees be subject to different parameters than DHS uses under 8 U.S.C. § 1356(m)." ECF 26 at 22. "Defendants do not agree, however, that the RIA prohibits USCIS from modifying EB-5 fees pursuant to its 8 U.S.C. § 1356(m) authority *in the interim*." *Id*. (emphasis added).

Perhaps Defendants creative construction of the law would have been plausible

6

during the *interim period* between March 15, 2022, and March 15, 2023, but Defendants' proposed reading would fundamentally change the statute's plain meaning, and thus fails as a matter of law. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666, 127 S. Ct. 2518, (2007).

In Section 106(a) of the RIA, Congress provided in full:

SEC. 106. TIMELY PROCESSING.

(a) Fee Study.— **Not later than 1 year after the date of the enactment of this Act, the Director of U.S. Citizenship and Immigration Services shall complete a study of fees charged in the administration of the program described in sections 203(b)(5) and 216A of the Immigration and Nationality Act (8 U.S.C. 1153(b)(5) and 1186b).**

RIA § 106(a).

Defendants admit they did not comply with the law, but claim that they did not have to. ECF 26 at 22. That is wrong and the failure to complete the fee study has caused Defendants to set fees without connecting fees to timely processing.

In Section 106(b) of the RIA, Congress provided in full:

(b) Adjustment of Fees To Achieve Efficient Processing.— **Notwithstanding section 286(m) of the Immigration and Nationality Act (8 U.S.C. 1356(m)), and except as provided under subsection (c), the Director, not later than 60 days after the completion of the study under subsection (a), shall set fees** for services provided under sections 203(b)(5) and 216A of such Act (8 U.S.C. 1153(b)(5) and 1186b) at a level sufficient to ensure the full recovery only of the costs of providing such services, including the cost of attaining the goal of completing adjudications, on average, not later than—
    (1) 180 days after receiving a proposal for the establishment of a regional center described in section 203(b)(5)(E) of such Act;
    (2) 180 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act;

(3) 90 days after receiving an application for approval of an investment in a new commercial enterprise described in section 203(b)(5)(F) of such Act that is located in a targeted employment area (as defined in section 203(b)(5)(D) of such Act);
(4) 240 days after receiving a petition from an alien desiring to be classified under section 203(b)(5)(E) of such Act;
(5) 120 days after receiving a petition from an alien desiring to be classified under section 203(b)(5)(E) of such Act with respect to an investment in a targeted employment area (as defined in section 203(b)(5)(D) of such Act); and
(6) 240 days after receiving a petition from an alien for removal of conditions described in section 216A(c) of such Act.

RIA § 106(b) (emphasis added).

Congress plainly required the Director to set fees 60 days after completion of the fee study on March 15, 2023 tied to efficient processing times. *Id*. Defendants cannot seriously dispute that the fees governing the EB-5 program promulgated in the Final Rule are inconsistent with the RIA. ECF 26 at 22-23.

Defendants' attempt to argue that USCIS did not violate the RIA because RIA § 106(f) provided an escape hatch for the fee study and fees set based on the study would fundamentally alter the statute, and takes RIA § 106(f) out of context. *National Assn. of Home Builders*, 551 U.S. at 666. Congress did not provide an exception to the rule in Section 106(f) as Defendants allege. Section 106(f) provides in full:

**(f) Rule of Construction Regarding Modification of Fees.—** Nothing in this section may be construed to require any modification of fees before the completion of—
**(1)** the fee study described in subsection (a); or
**(2)** regulations promulgated by the Secretary of Homeland Security, in accordance with subchapter II of chapter 5 and chapter 7 of title 5, United States Code (commonly known as the "Administrative Procedure Act"), to carry out subsections (b) and (c).

The natural reading of section 106(f) means that Congress did not **require** USCIS to modify fees "**before the completion of**" the fee study or regulations. Congress did

8

authorize USCIS to set fees without completing the fee study or set fees without also setting them to ensure timely processing; the provision at RIA § 106(f) clarifies that USCIS did not have to modify fees **prior to** the fee study or regulations. The provision did not:

- Change the time required to complete a fee study under section 106(a);
- Change the time required to set fees after completion of the fee study in section 106(b);
- Grant USCIS any authority to modify fees for the EB-5 program without completing the fee study.

Defendants' construction of RIA § 106(f) would change the plain meaning of Sections 106(a) and (b), when a natural reading allows each provision to operate together. Defendants' construction is wrong. USCIS lacked the authority to set fees for the EB-5 program after March 15, 2023, without completing a fee study. USCIS's admitted disregard for the law should be enjoined and the fees under the Final Rule must be set aside under APA § 705. *See Fla. Dep't of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52, 128 S. Ct. 2326 (2008) (stating "it is not for us to substitute our view of . . . policy for the legislation which has been passed by Congress" (*quoting Baltimore Cty. v. Hechinger Liquidated Tr. (In re Hechinger Inv. Co. of Del., Inc.*), 335 F.3d 243, 256 (3d Cir. 2003). Congress provided USCIS with no flexibility to conduct the fee study and set fees governing the EB-5 program accordingly.

IV. **Using Gross Revenues to Assess Businesses "Ability To Pay" While Using Net Income To Assess Individuals "Ability To Pay" Fees and Businesses "Ability To Pay" Employees Was Arbitrary and Capricious**

USCIS arbitrarily and capriciously failed to use the same methodology when assessing businesses "ability to pay" for the modification of fees and institution of an

9

Asylum Program Fee. An agency action must be set aside under the APA if, as relevant here, it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). That test is met where "the agency (1) 'entirely failed to consider an important aspect of the problem,' (2) 'offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise,' (3) 'failed to base its decision on consideration of the relevant factors,' or (4) made 'a clear error of judgment.'" *WildEarth Guardians v. United States BLM*, 870 F.3d 1222, 1233 (10th Cir. 2017); (*quoting New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009)).

This standard, while deferential to Defendants, has been met here with respect to fees charged to the membership of ITServ. In reaching the conclusion that there would be a less than 1% impact on the finances of most small and non-profit filers by virtue of the increases to H-1B fees and Employment-based Immigrant Visa Petitions, filing using Forms I-129 and I-140, in addition to the additional Asylum Fee, USCIS considered only the reported gross income of these entities as reported on Forms I-129 and I-140. USCIS then based its impact percentage calculation on that figure. 89 Fed. Reg. at 6356-57.

When construing an employer's "ability to pay" an employee using a Form I-140, however, USCIS has long used a different assessment: the employers' net income or net profit. *Matter of Sonegawa*, 12 I.& N. Dec. 612 (BIA 1967); *Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 877 (E.D. Mich. 2010); USCIS *Policy Manual Volume 6 - Immigrants Part E - Employment-Based Immigration Chapter 4 - Ability to Pay*, https://www.uscis.gov/policy-manual/volume-6-part-e-chapter-4 (*last accessed* Nov. 22,

10

2024).

The departure from agency practice to calculate businesses "ability to pay" USCIS fees without examining the agency's longstanding methodology was arbitrary and capricious. Defendants' attempt to distinguish the cases cited by Plaintiffs in their opening brief miss the point: "an agency may not treat like cases differently," *Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 178 (D.C. Cir. 1997). In treating a businesses' seeking immigration benefits differently with regard to the "ability to pay," based on who the businesses are paying USCIS has acted arbitrarily in the absence of discussing the divergence from past practice. In determining the "ability to pay" fees, USCIS used gross revenues without acknowledging that it uses a different methodology and captures information related to the net income when assessing an employer's ability to pay on the same form: Form I-140. The Service recognizes this concept as it considers only net income when evaluating an employer's ability to pay on a Form I-140 yet, when assessing the impact of the proposed filing fee increases on employers filing Form I-140, it has intentionally used the impact on gross revenues as a measure of "ability to pay."

The use of a double standard was not acknowledged by USCIS. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) ("unexplained inconsistency" in agency practice is a reason for holding a policy reversal "arbitrary and capricious" under the APA, unless "the agency adequately explains the reasons for a reversal of policy"). Even Defendants concede that USCIS did not consider this issue, though Defendants acknowledge other instances where USCIS used net income to set fees. ECF 26 at 29. Thus, USCIS's enhanced fees and Asylum Program Fee for companies submitting Forms I-129 and I-140 should be set aside as

"arbitrary and capricious" because the agency failed to provide a "reasoned explanation" for its decision to change course. *Massachusetts v. EPA*, 549 U.S. 497, 127 S. Ct. 1438, 1463, (2007); *see State Farm*, 463 U.S. at 42-43. There is no reasoned or benign explanation for USCIS' refusal to conform to the express intent of Congress.

### V.     Vacatur is the Appropriate Remedy

Defendants' claim that universal vacatur is not available under 5 U.S.C. § 706(2) is unfounded. Under the APA, a court "shall...set aside" agency action that is not in accordance with the law or exceeds statutory authority or limitations. 5 U.S.C. § 706(2). When agency action exceeds statutory authority, the "default rule" is that vacatur is the appropriate remedy. *See State of Texas et al. v. U.S. Dep't. of Homeland Sec. et al.,* Civ. Act. No. 6:24-cv-00306-JCB, ECF 121 at 71 – 72, *citing Cargill v. Garland,* 57 F.4th 447, 472 (5th Cir. 2023) (en banc); *Harmon v. Thornburgh,* 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated"); *see also Am. Bankers Assn' v. Nat'l Credit Unition Admin.,* 934 F.3d 649, 673 (D.C. Cir 2019)("When a rule is contrary to law, the ordinary practice is to vacate it.")(internal citation omitted). In any event, the question of whether Article III limits this remedy are premature and more appropriate for higher courts. *See Youngstown Sheet & Tube Co. v. Sawyer,* 343, U.S. 579, 635 (1952) (Jackson, J., concurring)(authority is maximized when acting under congressional delegation).

Defendants' claim that the Court could remand without vacatur is undermined by the same factor test it voluntarily invokes. Defendants note that in *Allied-Signal*, the court remanded without vacatur found that the agency "may" be able to justify the rule. ECF 26

12

at 40. Defendants further note that a strong showing of one factor may eliminate the need to find a similarly strong showing of the other factor. However, Defendants fail to consider that the Agency's record of ineptitude, opacity, and disrespect for the will of Congress with respect to the Fee Rule is a strong showing of the Agency's deficiencies. Defendants also ignore the extent to which USCIS' actions undermine its claims that the implementation of the Fee Rule was correct. Defendants overstate the potential disruptive consequences of an interim change, such as reverting to its pre-existing fee structure by a certain date. *Id.* Defendants claim that the possibility of a temporary disruption outweighs the seriousness of the fact that the Agency disregards the will of Congress every day it refuses to complete the Fee Study. *Id.* Perhaps worst of all, Defendants imply that vacatur would deprive qualified applicants of fee exemptions, suggesting that Plaintiffs would be responsible for USCIS' apparent refusal to operate efficiently and calculate its fees as Congress intended. *Id.* at 42. Defendants' attempt to pit immigrants against each other is a red herring and unbecoming of a service agency.

Absent judicial intervention, Defendants will continue to disregard Congressional intent and undermine the separation of powers, privileging agency discretion over Congressional directives. If this Court accepts the argument that any change would be worse than Defendants' current unlawful Fee Rule and operational dysfunction, the dysfunction and associated harms will persist without incentive for improvement. If this Court allows Defendants to flout the will of Congress at their discretion without consequence or rebuke, USCIS will have little reason to comply with future Congressional directives.

## CONCLUSION

For these reasons, the Court should vacate the Rule. Should the Court decline to vacate the Rule, the Court should still consider granting limited relief to Plaintiffs.

Dated: November 22, 2024                                   Respectfully submitted,


*/s/ Jesse M. Bless*
Jesse M. Bless
Bless Litigation LLC
6 Vineyard Lane
Georgetown, MA 01833
Phone: (781) 704-3897
Email: jesse@blesslitigation.com

*/s/ Matthew T. Galati*
Matthew T. Galati
The Galati Law Firm, LLC
8080 Old York Road, Suite 204
Elkins Park, PA 19027
Phone: (215) 310-0231
Email: matt@galati.law

*/s/ Jonathan D. Wasden*
Jonathan D. Wasden
Wasden Law
9427 Goldfield Lane
Burke, VA 22015
Phone: (843) 872-4978
Email: jon@wasden.law

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

Undersigned counsel certify that on November 22, 2024, the forgoing reply brief was filed through the Court's CM/ECF system, which will transmit an email notification and electronic hyperlink of that filing to the registered participants as identified on the Notice of Electronic Filing. As the United States Attorney's Office for the District of Colorado has not made an appearance in the case a copy of the foregoing will be served on their office by certified mail. Additionally, a copy of the foregoing will be provided to the civil Chief via email at: kevin.traskos@usdoj.gov as well as U.S. Department of Justice attorney, Cynthia Liao at: Cynthia.F.Liao@usdoj.gov.

Respectfully submitted,

*/s/ Jesse M. Bless*
Jesse M. Bless
Bless Litigation LLC
6 Vineyard Lane
Georgetown, MA 01833
Phone: (781) 704-3897
Email: jesse@blesslitigation.com

*/s/ Matthew T. Galati*
Matthew T. Galati
The Galati Law Firm, LLC
8080 Old York Road, Suite 204
Elkins Park, PA 19027
Phone: (215) 310-0231
Email: matt@galati.law

*/s/ Jonathan D. Wasden*
Jonathan D. Wasden
Wasden Law
9427 Goldfield Lane
Burke, VA 22015
Phone: (843) 872-4978
Email: jon@wasden.law

*Attorneys for the Plaintiffs*