**42797**

# Rules and Regulations

**Federal Register**

Vol. 90, No. 170

Friday, September 5, 2025

This section of the FEDERAL REGISTER contains regulatory documents having general applicability and legal effect, most of which are keyed to and codified in the Code of Federal Regulations, which is published under 50 titles pursuant to 44 U.S.C. 1510.

The Code of Federal Regulations is sold by the Superintendent of Documents.

## DEPARTMENT OF HOMELAND SECURITY

## 8 CFR Part 287

[CIS No. 2827–25; DHS Docket No. USCIS–2025–0106]

## RIN 1615–AD03

## Codification of Certain U.S. Citizenship and Immigration Services Law Enforcement Authorities

**AGENCY:** U.S. Citizenship and Immigration Services, DHS.

**ACTION:** Final rule.

**SUMMARY:** The Department of Homeland Security (DHS) is amending its regulations to codify certain law enforcement authorities delegated by the Secretary of Homeland Security (Secretary) to the Director of U.S. Citizenship and Immigration Services (USCIS) and subsequently redelegated to particular officers or employees of USCIS. These authorities allow particular USCIS personnel to investigate and enforce civil and criminal violations of the immigration laws within the jurisdiction of USCIS. These authorities include, but are not limited to, the issuance and execution of warrants, the arrest of individuals, and carrying of firearms.

**DATES:** This final rule is effective on October 6, 2025.

**FOR FURTHER INFORMATION CONTACT:** Security and Public Safety Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security, 5900 Capital Gateway Drive, Camp Springs, MD 20746; telephone (240) 721–3000.

**SUPPLEMENTARY INFORMATION:**

## Table of Contents

I. Background
   A. Creation of the Department of Homeland Security and the Homeland Security Act
   B. Creation of the USCIS Fraud Detection and National Security Directorate
   C. Secretary's 2025 Delegation to USCIS
II. Discussion of the Final Rule
   A. Purpose of the Regulatory Action
   B. Legal Authority
   C. Summary of the Major Provisions of the Regulatory Action
      i. Definition of Law Enforcement or Other Official
      ii. Disposition of Criminal Cases
      iii. Arrests of Persons Under INA § 287(a)(5)(A) for any Offense Committed in the Presence of an Officer
      iv. Arrests of Persons Under INA § 287(a)(5)(B) for any Felony While Performing Duties
      v. Arrests of Persons for Facilitating Unlawful Entry of Aliens Into the United States
      vi. Power and Authority To Execute Search Warrants and Service Arrest Warrants
      vii. Carrying Firearms
      viii. Standards for Law Enforcement Activities
      ix. Criminal Search Warrant and Firearms Policies
      x. Technical Edits and Edits for Clarity
III. Statutory and Regulatory Requirements
   A. Administrative Procedure Act
   B. Executive Orders 12866 (Regulatory Planning and Review), 13563 (Improving Regulation and Regulatory Review), and 14192 (Unleashing Prosperity Through Deregulation)
   C. Regulatory Flexibility Act
   D. Unfunded Mandates Reform Act of 1995
   E. Small Business Regulatory Enforcement Fairness Act of 1996 (Congressional Review Act)
   F. Executive Order 13132 (Federalism)
   G. Executive Order 12988 (Civil Justice Reform)
   H. Family Assessment
   I. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)
   J. National Environmental Policy Act (NEPA)
   K. Paperwork Reduction Act

## Table of Abbreviations

BCIS—Bureau of Citizenship and Immigration Services
CBP—U.S. Customs and Border Protection
CPI–U—Consumer Price Index for All Urban Consumers
CRA—Congressional Review Act
DHS—Department of Homeland Security
DOJ—Department of Justice
FDNS—Fraud Detection and National Security Directorate
HSA—Homeland Security Act of 2002
ICE—U.S. Immigration and Customs Enforcement
INA—Immigration and Nationality Act
MOA—Memorandum of Agreement
NEPA—National Environmental Policy Act
SBREFA—Small Business Regulatory Enforcement Fairness Act of 1996
UMRA—Unfunded Mandates Reform Act of 1995
USCIS—U.S. Citizenship and Immigration Services

## I. Background

*A. Creation of the Department of Homeland Security and the Homeland Security Act*

After the horrific September 11, 2001, terrorist attacks, Congress legislated the combining of functions of various agencies involved in the administration and enforcement of the civil and criminal immigration laws into one department within the Executive Branch, led by a cabinet-level secretary. On November 25, 2002, President George W. Bush signed into law the Homeland Security Act of 2002 (Pub. L. 107–296) (HSA), which created the Department of Homeland Security (DHS). The HSA abolished the Department of Justice's (DOJ) former Immigration and Naturalization Service (INS) and transferred its immigration and other functions to the Secretary of Homeland Security. The Secretary gained authority over all functions and roles within DHS, and except where prohibited, she can delegate any of her functions to any officer, employee or organizational unit in DHS. *See* 6 U.S.C. 112; 8 U.S.C. 1103(a)(4); 8 CFR 2.1.

Sections 1512(d) and 1517 of the HSA provide that references relating to legacy INS in statutes, regulations, directives, or delegations of authority, shall be deemed to refer to the appropriate official or component of DHS, as delegated by the Secretary, who holds authority over all functions and roles within DHS. 6 U.S.C. 552(d), 557. Additionally, the HSA, as amended, directed the division of the prior immigration functions of INS to three immigration bureaus within DHS, specifically the Bureau of Citizenship and Immigration Services (BCIS),[1] the Bureau of Customs and Border Protection (CBP),[2] and the Bureau of Immigration and Customs Enforcement (ICE).[3] The BCIS (now USCIS) was

---

[1] 6 U.S.C. 271.

[2] 6 U.S.C. 211.

[3] 6 U.S.C. 252. In 2007, The Bureau of Immigration and Customs Enforcement became U.S. Immigration and Customs Enforcement (ICE), and the Bureau of Customs and Border Protection became U.S. Customs and Border Protection (CBP). Sixty days after DHS made the required notice, the change became official on March 31, 2007. The public was informed of this change via notice in the **Federal Register** on April 23, 2007. *See* 72 FR 20131.

**42798**    **Federal Register**/Vol. 90, No. 170/Friday, September 5, 2025/Rules and Regulations

delegated the adjudicatory and naturalization functions of the former INS.[4] Further, when establishing DHS, Congress explained that DHS was prohibited from relying on the authority provided by 6 U.S.C. 542 to reorganize the former INS's authorities and functions into DHS by recombining, joining, or consolidating the functions and organizational units within the Bureau of Border Security[5] or the Bureau of Citizenship and Immigration Services. *See* 6 U.S.C. 291(b). DHS is not recombining USCIS and ICE into a single agency or otherwise combining, joining, or consolidating functions or organizational units together. Instead, this final rule codifies USCIS' independent authority to investigate and enforce civil and criminal violations of the immigration laws within the jurisdiction of USCIS.

All authorities and functions of DHS to administer and enforce the immigration laws of the United States are vested with the Secretary and may be redelegated by the Secretary by various means. *See* 6 U.S.C. 112; 8 U.S.C. 1103(a)(4). Therefore, since the inception of DHS, the Department's full authority has rested with the Secretary and has been delegated as he or she saw fit for organizational and operational purposes. To further clarify the Secretary's authority over DHS, on March 6, 2003, DHS promulgated a final rule at 8 CFR 2.1, which amended the previous regulation by removing the reference to the Commissioner of the INS and updating the regulation with an equivalent authority and redelegation provision for the Secretary of Homeland Security. *See* Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 FR 10922 (Mar. 6, 2003). The regulation acknowledges and explains the Secretary's authority to delegate her authority and that such delegation "[. . .] may be made by regulation, directive, memorandum, or other means as deemed appropriate by the Secretary in the exercise of the Secretary's discretion" and that "[a] delegation of authority or function may in the Secretary's discretion be published in the **Federal Register**, but such publication is not required." 8 CFR 2.1.

On June 5, 2003, then-Secretary Ridge exercised his authority to delegate certain immigration responsibilities to the Bureau of Citizenship and Immigration Services (now USCIS). *See* DHS Delegation No. 0150.1 (June 5, 2003). Specifically, USCIS was delegated the authority to interrogate aliens, issue subpoenas, administer oaths, take and consider evidence, and fingerprint and photograph aliens under sections 287(a), (b), and (f) of the Immigration and Nationality Act (INA), 8 U.S.C. 1357(a), (b), and (f), and section 235(d) of the INA, 8 U.S.C. 1225(d). *See* DHS Delegation No. 0150.1(II)(S). Section III of DHS Delegation No. 0150.1 specifically limited the enforcement authority of USCIS. It prohibited USCIS from enforcing immigration laws by inspection of aliens or vehicles, issuance or execution of warrants, detention or release of aliens on bond, removal of aliens from the United States, issuance of stays of removal, reinstatement of removal orders, or any other enforcement authority exclusively delegated to the Commissioner of CBP or the Assistant Secretary (now Director) for ICE. *See* DHS Delegation No. 0150.1(III).

Title 8 of the CFR continued to be valid as DHS was the successor to INS. However, it was appropriate at that time to conform Title 8 of the CFR to the new governmental structures as laid out in the HSA and the Department of Homeland Security Reorganization Plan, as modified, (Reorganization Plan).[6] On June 13, 2003, DHS published the final rule "Powers and Authority of Officers and Employees; Revisions to the Internal Review Process for Alleged Violations of the Standards for Enforcement Activities" (2003 Final Rule) to amend Title 8 of the CFR to reflect the structural organization of DHS. *See* 68 FR 35273. The 2003 Final Rule was published without having gone through notice and comment rulemaking because it was determined the rule was excepted from the notice and comment requirements of the Administrative Procedure Act as a rule of agency organization, procedure, or

practice. *Id.* at 35274; *see also* 5 U.S.C. 553(b)(A).

The 2003 Final Rule amended parts 1, 103, 239, and 287 of Title 8 of the CFR. In the 2003 Final Rule definitions were added for the three immigration bureaus within DHS that were delegated the authorities of the former INS—the Bureau of Citizenship and Immigration Services (BCIS), the Bureau of Customs and Border Protection (CBP), and the Bureau of Immigration and Customs Enforcement (ICE). The 2003 Final Rule clarified that the functions of INS continued under DHS and highlighted instances where there was a transfer of function to other departments such as the Department of Health and Human Services.[7] The 2003 Final Rule also amended powers and authorities, departments, job titles, and delegations under the Secretary's general authority found in 8 CFR 2.1. Except where prohibited, the Secretary can delegate any of his or her functions to any officer, employee, or organization unit in DHS.[8]

For example, deportation officers and immigration enforcement agents were provided the authority to execute search warrants under 8 CFR 287.5(e)(1)(v) and 287.5(e)(1)(vi). Similarly, deportation officers and immigration enforcement agents were provided the authority to make arrests under INA 236(a) under 8 CFR 287.5(c)(1) through (6), serve warrants of arrest for non-immigration violations under 8 CFR 287.5(e)(4)(v) and 287.5(e)(4)(vi), and issue detainers under 8 CFR 287.7(b)(3) and 287.7(b)(6). In all cases, those authorities were delegated by the Secretary.[9] At that time, BCIS (now USCIS) was not delegated the same authorities through regulation or other delegation.

*B. Creation of the USCIS Fraud Detection and National Security Directorate*

In 2004, USCIS created the Fraud Detection and National Security Office (FDNS) in response to a Congressional recommendation to establish an organization "responsible for developing, implementing, directing, and overseeing the joint [US]CIS–ICE anti-fraud initiative, and conducting law enforcement/background checks on

---

[4] *See* 6 U.S.C. 271. In 2004, BCIS became U.S. Citizenship and Immigration Services (USCIS). Sixty days after DHS made the required notice to the appropriate congressional committees, the change from BCIS to USCIS became official effective August 23, 2004. The public was informed of this change via notice in the **Federal Register** on October 13, 2004. *See* 69 FR 60938.

[5] The then Bureau of Border Security (now ICE and CBP) was to oversee border patrol, detention and removal, and investigations. *See* 6 U.S.C. 252.

[6] *See* 6 U.S.C. 542. The original DHS Reorganization Plan was submitted on November 25, 2002, pursuant to Section 1502 of the HSA, 6 U.S.C. 542, which included two categories of information concerning plans for the new DHS; the "transfer of agencies, personnel, assets, and obligations," and "any consolidation, reorganization, or streamlining of agencies transferred" to DHS. The Reorganization Plan was amended on January 7, 2003. *See* A Reorganization Plan for the Department of Homeland Security (Jan. 7, 2003). 108th Congress, 1st Session, House Document: 108–16.

[7] *See* section 462 of the HSA, as amended, 6 U.S.C. 279 (concerning unaccompanied alien children).

[8] *See* 6 U.S.C. 112.

[9] *See* DHS Delegation No. 7030.2, Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement (Mar. 1, 2003), *https://www.ice.gov/doclib/foia/policy/ 7030.2_DelegationAuthority_03.01.2003.pdf*; DHS Delegation No. 0150.1, Delegation to the Bureau of Citizenship and Immigration Services (June 5, 2003), *https://www.hsdl.org/c/view?docid=234775*.

**Federal Register** / Vol. 90, No. 170 / Friday, September 5, 2025 / Rules and Regulations    **42799**

every applicant, beneficiary, and petitioner prior to granting any immigration benefits.'' [10] In 2010, USCIS responded to public concerns about the integrity of the immigration system by elevating FDNS from an office to a Directorate [11] which elevated the profile of its work within USCIS, ensured that an anti-fraud and national security perspective informed agency policy making at the highest levels, brought about operational improvements, and enhanced the integration of the FDNS mission in all facets of the agency's work.

Currently, FDNS supports the USCIS mission by establishing guidance and overseeing processes to identify and mitigate threats to national security and public safety posed by those seeking immigration benefits; detecting, pursuing, and deterring immigration benefit fraud; identifying and removing systemic vulnerabilities in the process of the legal immigration system; developing and implementing security screening programs and procedures; and acting as a USCIS conduit for information sharing and collaboration with other governmental agencies.

The initial delegation from the Secretary to USCIS directed USCIS to coordinate with ICE and CBP on complementary, concurrent, or overlapping authorities. *See* DHS Delegation No. 0150.1(III). One authority concurrently delegated to both USCIS and ICE was the authority to conduct civil and criminal investigations of violations of immigration laws, including but not limited to alleged fraud, with respect to immigration benefits available under the INA.[12]

In 2017, then-Secretary Johnson reaffirmed the delegated authority of the Director of USCIS to conduct certain law enforcement activities relating to the accessing of internet and publicly available social media content. *See* DHS Delegation No. 15002 (Jan. 19, 2017). Specifically, the delegation stated that

[i]n matters under the jurisdiction of USCIS, to protect the national security and public safety, to conduct law enforcement

activities, including but not limited to accessing internet and publicly available social media content using a fictitious account or identity, provided that such activities shall only be conducted by properly trained and authorized officers, and in a manner consistent with the Reservations set forth in Department of Homeland Security Delegation Number 0150.1 and consistent with the Department's obligations to protect privacy and civil rights and civil liberties.[13]

Subsequently, on March 28, 2017, the USCIS Director delegated the authority to conduct law enforcement activities relating to accessing internet and publicly available social media content to the Associate Director for FDNS [14] and the Chief of the Office of Security and Integrity.[15] This authority was to be exercised in matters under the jurisdiction of their respective directorates to protect national security and public safety and was only to be enacted by properly trained and authorized officers and employees of USCIS.[16]

On July 23, 2025, USCIS and ICE entered into their fourth memorandum of agreement (MOA) to coordinate on the investigation of immigration benefit fraud and referral of cases for criminal investigation.[17] The MOA provides that ICE has sole responsibility for detecting, deterring, and conducting criminal investigations of immigration benefit fraud. USCIS is primarily responsible for identifying and detecting potential fraud through civil investigations conducted in the ordinary course of the adjudication of applications and petitions for immigration benefits. Thus, USCIS currently must refer any potential criminal activity or

investigation to ICE. The MOA divides criminal and civil immigration benefit fraud investigations between ICE and USCIS, respectively.

While there is an overlap between the original ICE and USCIS delegations, the current MOA explains DHS policy and the division of labor between the two components based upon the original delegations. These internal DHS policies and MOAs will be appropriately updated as a result of the Secretary's 2025 delegation to USCIS discussed below and following publication of this rule.

*C. Secretary's 2025 Delegation to USCIS*

As described in Executive Order 14159, ''Protecting the American People Against Invasion,'' the United States saw ''an unprecedented flood of illegal immigration'' with many of these aliens presenting significant threats to national security and public safety. 90 FR 8443 (published Jan. 29, 2025). It is this administration's stated policy that it is the federal government's responsibility to ''faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people.'' *Id.* Additionally, Executive Order 14159 directs the leaders of ICE, CBP, and USCIS to ''set priorities for their agencies that protect the public safety and national security interests of the American people, including by ensuring the successful enforcement of final orders of removal.'' *Id.* In order to meet the stated goals of Executive Order 14159 it is necessary for DHS to maximize the use of all of its available resources while also ensuring they are deployed in a judicious and efficient manner.

USCIS performs critical work for DHS and is integral to the enforcement of immigration laws by actively supporting and collaborating with the law enforcement community at all levels as well as civilly enforcing immigration laws through its adjudications. However, DHS Delegation No. 0150.1 has historically limited the scope of USCIS' authority, capabilities, and involvement in the enforcement of immigration laws.

To be responsive to Executive Order 14159 and to ensure that DHS resources are being leveraged to their greatest capacity, the Secretary has determined that USCIS will assume a more engaged and proactive posture in the Department's efforts to enforce immigration laws. To facilitate this, the Secretary delegated to the Director of USCIS the authority to conduct additional law enforcement activities to

---

[10] H.R. Conf. Rep. 108–774, at 74 (2004), *as reprinted in* 2004 U.S.C.C.A.N. 1198, 1242.

[11] USCIS is divided into directorates and program offices with the former being director-led departments in charge of multiple divisions and the latter chief-led offices that have a specific function. *See* USCIS, Directorates and Program Offices, *https://www.uscis.gov/about-us/organization/directorates-and-program-offices* (last visited Jul. 29, 2025).

[12] *See* DHS Delegation No. 0150.1(II)(I) (June 5, 2003) and DHS Delegation No. 07030.2(2)(I), Delegation of Authority to the Assistant Secretary for the Bureau of Immigration and Customs Enforcement (Mar. 1, 2003).

[13] See Secretary of Homeland Security Delegation No. 15002, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities, Section II (Jan. 19, 2017).

[14] Delegation of Authority to Conduct Certain Law Enforcement Activities Including, But Not Limited to, Accessing Internet and Publicly Available Social Media Content Using a Fictitious Account or Identity (Mar. 28, 2017).

[15] Delegation of Authority to Access the Internet and Publicly Available Social Media Content Using Fictitious Account or Identity (Feb. 11, 2023).

[16] *See* 5 U.S.C. 2104, 2105(a). The terms officer and employee do not include contractor personnel.

[17] Memorandum of Agreement Between USCIS and ICE Regarding National Security, Public Safety and Immigration Benefit Fraud Case Referrals (Jul. 23. 2025) (Note this MOA supersedes three related MOAs addressing referral of immigration cases with public safety (*i.e.,* criminality issues) and national security concerns, entitled Memorandum of Agreement between USCIS and ICE on the Issuance of Notices to Appear to Aliens Encountered during an Adjudication (June 20, 2006), Memorandum of Agreement between USCIS and ICE on the Investigation of Immigration Benefit Fraud (Sept. 25, 2008) and Memorandum of Agreement Between USCIS and ICE Regarding the Referral of Immigration Benefit Fraud and Public Safety Cases (Dec. 15, 2020).

**42800**    **Federal Register** / Vol. 90, No. 170 / Friday, September 5, 2025 / Rules and Regulations

enforce civil and criminal violations of immigration laws within the jurisdiction of USCIS. *See* DHS Delegation No. 15006 (May 2, 2025). DHS Delegation No. 15006 provides the Director of USCIS with the authority to order expedited removal under 8 U.S.C. 1225, issue and execute detainers and warrants of arrest or removal, detain aliens, release aliens on bond and other appropriate conditions as provided by law, and remove aliens from the United States. Further, DHS Delegation No. 15006, upon redelegation by the USCIS Director, bolsters USCIS's existing authority to investigate alleged civil and criminal violations of the immigration laws by delegating necessary law enforcement authorities within the jurisdiction of USCIS, including but not limited to issuance and execution of warrants, and making recommendations for prosecutions or other appropriate action when advisable.

These additional authorities are provided to enhance DHS resources that may be employed to execute the administration's critical work to enforce immigration laws. DHS is now codifying certain provisions of DHS Delegation No. 15006 described in this final rule to provide notice to the public of these organizational changes that bring USCIS in line with other DHS components engaged in the enforcement of immigration laws. The changes are published as a final rule and will take effect 30 days post publication. Upon publication of this final rule, USCIS internal policies and MOAs, such as that with ICE, will be updated to reflect the recent delegations of law enforcement authority to the Director of USCIS.

## II. Discussion of This Final Rule

### A. Purpose of the Regulatory Action

On May 2, 2025, the Secretary delegated authorities to the USCIS Director to take additional actions to investigate and enforce civil and criminal violations of the immigration laws. *See* DHS Delegation No. 15006. The authority delegated by the Secretary includes standard law enforcement authorities commensurate with other federal law enforcement personnel, including but not limited to the ability to arrest persons for crimes committed in the presence of the law enforcement officer or for felonies. The purpose of this rule is to codify specific authorities delegated by the Secretary to the Director of USCIS. DHS is amending 8 CFR part 287 to reflect this enhancement to the authorities delegated to the Director of USCIS.

This rule will allow the Director of USCIS to more thoroughly fulfill USCIS' national security, public safety, and fraud missions for cases within its jurisdiction. Allowing USCIS to take law enforcement actions on cases identified in the USCIS adjudicatory process will increase national security, public safety, and the integrity of the United States' immigration system.

### B. Legal Authority

The authority for the Secretary to issue this final rule is found in section 103(a) of the INA, 8 U.S.C. 1103(a), which authorizes the Secretary to administer and enforce the immigration and nationality laws, establish such regulations and perform such other acts as the Secretary deems necessary for carrying out such authority, and require or authorize any DHS employee to exercise any of the powers, privileges, or duties conferred upon DHS under the immigration laws. In addition, section 102 of the HSA, 6 U.S.C. 112, vests all of the functions of DHS in the Secretary and authorizes the Secretary to issue regulations.[18] Specifically, section 102(a)(3) of the HSA, 6 U.S.C. 112(a)(3), states that all functions of all officers, employees, and organizational units are vested in the Secretary, and section 102(b)(1) of the HSA, 6 U.S.C 112(b)(1), states that the Secretary may delegate any of the Secretary's functions to any officer, employee, or organizational unit of DHS. Originally, on June 5, 2003, the Secretary exercised his authority to delegate certain immigration responsibilities to the Bureau of Citizenship and Immigration Services, now USCIS. *See* DHS Delegation No. 0150.1. Most recently, on May 2, 2025, the Secretary exercised her authority and delegated to the USCIS Director the authority to perform specific law enforcement functions which will allow USCIS to take additional actions to enforce civil and criminal violations of the immigration laws. *See* DHS Delegation No. 15006.

### C. Summary of the Major Provisions of the Regulatory Action

The law enforcement authorities delegated to the Director of USCIS include, but are not limited to, the authority to investigate alleged civil and criminal violations of the immigration laws within the jurisdiction of USCIS,

issue and execute both search and arrest warrants, detain and remove aliens, and make recommendations for prosecutions or other appropriate action when deemed advisable. To reflect the new authority delegated to the Director of USCIS, this final rule amends the following regulations to codify USCIS law enforcement authorities commensurate with those authorities previously only delegated to ICE and CBP regarding the enforcement of immigration laws. This is in addition to the Director of USCIS' current regulatory authority to designate individuals or a class of individuals to arrest aliens for immigration violations or immigration related felonies, issue immigration detainers, and inspect aliens seeking admission to the United States. *See* 8 CFR 287.5(c)(1)(viii), 287.5(d)(8), 287.7. This rule expands upon these existing law enforcement related powers to include:

i. Definition of Law Enforcement or Other Official (See 8 CFR 287.1(e) and (g) as Amended)

DHS is adding language to the definition of ''law enforcement official (or other official)'' to include a delegation by the Secretary regarding the administration of criminal justice. This change is intended for clarity and is already permitted by statute. DHS is also adding language to specify that the Director of USCIS, like the Commissioner of CBP and Assistant Director of ICE, may determine what is considered ''substantially equivalent'' to basic immigration law enforcement training.

ii. Disposition of Criminal Cases (See 8 CFR 287.2 as Amended)

DHS is adding ''supervisory law enforcement official(s) designated by the Director of USCIS'' to the list of positions that may initiate an investigation into a violation of the criminal provisions of the INA.

iii. Arrests of Persons Under INA § 287(a)(5)(A) or Any Offense Committed in the Presence of an Officer (See 8 CFR 287.5(c)(3)(vii) as Amended)

DHS is adding the Director of USCIS as a position that may designate individuals or a class of individuals as having the authority to arrest persons for crimes committed in the presence of the designated officer. This is standard for federal immigration law enforcement.

---

[18] Although several provisions of the INA discussed in this final rule refer exclusively to the ''Attorney General,'' such provisions are now to be read as referring to the Secretary of Homeland Security by operation of the HSA. *See* 6 U.S.C. 202(3), 251, 271(b), 542 note, 557; 8 U.S.C. 1103(a)(1) and (g), 1551 note; *Nielsen* v. *Preap,* 586 U.S. 392, 397 n.2 (2019).

iv. Arrests of Persons Under INA § 287(a)(5)(B) for any Felony While Performing Duties (See 8 CFR 287.5(c)(4)(ii)(G), 287.5(c)(4)(iii) as Amended)

DHS is adding the Director of USCIS as a position that may designate individuals or a class of individuals as having the authority to arrest persons for *any* felony, if the officer is performing immigration enforcement duties at the time of the arrest and if there is a likelihood of the person escaping before an arrest warrant can be obtained. This authority is standard for most federal immigration law enforcement. DHS is also adding language to specify that the Director of USCIS, like the Commissioner of CBP and Director of ICE, may revoke the certification provided to officers following successful completion of the required training course that allows officers to make arrests for any felonies committed while the immigration officer is performing duties related to immigration enforcement with just cause.

v. Arrests of Persons for Facilitating Unlawful Entry of Aliens Into the United States (See 8 CFR 287.5(c)(5)(ii)(G) as Amended)

DHS is adding the Director of USCIS as a position that may designate individuals or a class of individuals as having the authority to arrest persons who bring in, induce, transport, or harbor certain aliens for the purposes of unlawfully entering the United States.

vi. Power and Authority To Execute Search Warrants and Service of Arrest Warrants (See 8 CFR 287.5(e)(1)(viii), (e)(3)(viii), (e)(4)(viii) as Amended)

DHS is adding the Director of USCIS as a position that may designate individuals or a class of individuals as having the authority to execute search warrants, as well as service of arrest warrants for immigration and non-immigration violations. This authority is standard for federal immigration law enforcement.

vii. Carrying Firearms (See 8 CFR 287.5(f)(8) as Amended)

DHS is adding the Director of USCIS as a position that may designate individuals or a class of individuals as having the authority to carry firearms, provided these individual(s) receive appropriate training and maintain proficiency. This authority is standard for federal immigration law enforcement officials.

viii. Standards for Law Enforcement Activities (See 8 CFR 287.8(a)(1)(iv)(H); (a)(2)(iii)(H); and (e)(2)(v) as Amended).

DHS is adding the Director of USCIS as a position that will grant individuals or a class of individuals the authority to use non-deadly force, deadly force (in situations where the designated immigration officer or other persons are in danger), and initiate a vehicular pursuit to apprehend fleeing suspects who are attempting to avoid apprehension.

ix. Criminal Search Warrant and Firearms Policies (See 8 CFR 287.9(a) and (b) as Amended)

DHS is adding language requiring the Director of USCIS to provide guidance regarding officers' conduct relating to search, seizure, and firearms. Designated USCIS personnel will be authorized certain law enforcement authorities as delegated by the Secretary through the Director of USCIS. Historically these authorities were granted to CBP and ICE under the HSA and each agency has codified the required requisite training necessary to grant their law enforcement personnel basic immigration law enforcement authority. Both CBP and ICE establish in 8 CFR 287.1(g) that requisite training, as used in 8 CFR 287.5 and 287.8, is defined as the successful completion of a select list of established CBP or ICE Immigration Officer, Border Patrol, Immigration Detention Enforcement, or Special Agent academies or training courses or any training substantially equivalent thereto. This rule grants the Director of USCIS (in equivalent to the abilities to the Commissioner of CBP and the Director of ICE) the authority to determine what constitutes any training substantially equivalent to the codified basic immigration law enforcement trainings noted under 8 CFR 287.1(g). The Director of USCIS, in consultation with peer agencies CBP and ICE, will establish a substantially equivalent training course/academy to ensure USCIS designated law enforcement personnel successfully perform their duties upholding the immigration laws of the United States. Additionally, USCIS will establish ongoing training and continued learning metrics to ensure that designated officers maintain the necessary skills, stay updated on legal and procedural changes, and improve officer safety.

x. Technical Edits and Edits for Clarity

DHS is making technical edits to update or remove outdated organizational references. The rule amends 8 CFR 287.8(f)(1) to update the

legacy term ''Border and Transportation Security Directorate'' to ''Department of Homeland Security.'' *See* 8 CFR 287.8(f)(1) as amended.

**III. Statutory and Regulatory Requirements**

*A. Administrative Procedure Act*

Under the Administrative Procedure Act, the normal notice and comment procedures do not apply to an action that is a rule of agency organization, procedure, or practice. *See* 5 U.S.C. 553(b)(A). This exception to notice and comment rule making is colloquial referred to as the ''procedural exception.'' *Am. Fed'n of Labor & Cong. of Indus. Orgs.* v. *NLRB,* 57 F.4th 1023, 1043 (D.C. Cir. 2023). In general, the procedural exception is intended for ''internal house-keeping measures organizing agency activities.'' *Am. Hosp. Ass'n* v. *Bowen,* 834 F.2d 1037, 1045 (D.C. Cir. 1987). The ''statutory exception for procedural rules 'was provided to ensure that agencies retain latitude in organizing their internal operations.''' *Nat'l Sec. Couns.* v. *CIA,* 931 F. Supp. 2d 77, 106 (D.D.C. 2013) (quoting *Batterton* v. *Marshall,* 648 F.2d 694, 707 (D.C. Cir. 1980)). The changes made by this final rule to 8 CFR part 287 do nothing more than organize internal DHS operations through the codification of an internal delegation of certain law enforcement authorities by the Secretary of Homeland Security to a component head, the Director of USCIS. This delegation is wholly contained within the internal structure of DHS and aligns delegable authorities with the current administration's priorities.

As this is a rule of agency organization, procedure, or practice, DHS publishes it as a final rule in accordance with 5 U.S.C. 553(b)(A).

*B. Executive Orders 12866 (Regulatory Planning and Review), 13563 (Improving Regulation and Regulatory Review), and 14192 (Unleashing Prosperity Through Deregulation)*

Executive Orders 12866 (Regulatory Planning and Review) and 13563 (Improving Regulation and Regulatory Review) direct agencies to assess the costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits. Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. Executive Order 14192 (Unleashing Prosperity Through Deregulation) directs agencies to significantly reduce the private

**42802**    **Federal Register**/Vol. 90, No. 170/Friday, September 5, 2025/Rules and Regulations

expenditures required to comply with Federal regulations and provides that ''any new incremental costs associated with new regulations shall, to the extent permitted by law, be offset by the elimination of existing costs associated with at least 10 prior regulations.''

This rulemaking is limited to agency organization, management or personnel matters, and therefore is not a regulation or rule as defined by section 2 of Executive Order 12866. Moreover, the Office of Management and Budget has not designated this rule a ''significant regulatory action'' under section 3(f) of Executive Order 12866. Accordingly, OMB has not reviewed it.

Additionally, this final rule is not an Executive Order 14192 regulatory action because it is being issued with respect to an immigration-related function of the United States. The rule's primary direct purpose is to implement or interpret the immigration laws of the United States (as described in section 101(a)(17) of the INA, 8 U.S.C. 1101(a)(17)) or any other function performed by the U.S. Federal Government with respect to aliens. *See* OMB Memorandum M–25–20, ''Guidance Implementing Section 3 of Executive Order 14192, titled ''Unleashing Prosperity Through Deregulation'' (Mar. 26, 2025).

### C. Regulatory Flexibility Act

The Regulatory Flexibility Act (RFA) (5 U.S.C. 601 *et seq.*), as amended by the Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA), requires an agency to prepare and make available to the public a regulatory flexibility analysis that describes the effect of the rule on small entities (*i.e.,* small businesses, small organizations, and small governmental jurisdictions). The term ''small entities'' comprises small businesses, not-for-profit organizations that are independently owned and operated and are not dominant in their fields, and governmental jurisdictions with populations of less than 50,000.

The RFA's regulatory flexibility analysis requirements apply only to those rules for which an agency is required to publish a general notice of proposed rulemaking pursuant to 5 U.S.C. 553 or any other law. *See* 5 U.S.C. 604(a). DHS did not issue a notice of proposed rulemaking for this action. Therefore, a regulatory flexibility analysis is not required for this rule. Furthermore, the RFA's regulatory flexibility analysis requirements apply only to small entities subject to the requirements of the rule, of which there

are none.[19] This rule is one of agency organization, procedure or practice, because it codifies certain law enforcement authorities delegated by the Secretary of Homeland Security to USCIS through the Director of USCIS.

### D. Unfunded Mandates Reform Act of 1995

The Unfunded Mandates Reform Act of 1995 (UMRA) is intended, among other things, to curb the practice of imposing unfunded Federal mandates on State, local, and Tribal governments. Title II of UMRA requires each Federal agency to prepare a written statement assessing the effects of any Federal mandate in a proposed rule, or final rule for which the agency published a proposed rule, which includes any Federal mandate that may result in a $100 million or more expenditure (adjusted annually for inflation) in any one year by State, local, and tribal governments, in the aggregate, or by the private sector.[20] The inflation adjusted value of $100 million in 1995 is approximately $206 million in 2024 based on the Consumer Price Index for All Urban Consumers (CPI–U).[21] This rule is exempt from the written statement requirement, because DHS did not publish a notice of proposed rulemaking for this rule. In addition, this final rule does not contain a Federal mandate as the term is defined under UMRA.[22] The requirements of title II of UMRA, therefore, do not apply, and DHS has not prepared a statement under UMRA.

---

[19] *See* U.S. Small Business Administration, A Guide for Government Agencies: How to Comply with the Regulatory Flexibility Act at 9 (Aug. 2017), *https://advocacy.sba.gov/wp-content/uploads/2019/07/How-to-Comply-with-the-RFA-WEB.pdf.*

[20] *See* 2 U.S.C. 1532(a).

[21] *See* BLS, ''Historical Consumer Price Index for All Urban Consumers (CPI–U): U.S. city average, all items, by month,'' *https://www.bls.gov/cpi/tables/supplemental-files/historical-cpi-u-202412.pdf* (last visited May 26, 2025).Calculation of inflation: (1) Calculate the average monthly CPI–U for the reference year (1995) and the current year (2024); (2) Subtract reference year CPI–U from current year CPI–U; (3) Divide the difference of the reference year CPI–U and current year CPI–U by the reference year CPI–U; and (4) Multiply by 100=[(Average monthly CPI–U for 2024–Average monthly CPI–U for 1995) ÷ (Average monthly CPI–U for 1995)] × 100 = [(313.689 − 152.383) ÷ 152.383] = (161.306 ÷ 152.383) = 1.059 × 100 = 105.86 percent = 106 percent (rounded). Calculation of inflation-adjusted value: $100 million in 1995 dollars × 2.06 = $206 million in 2024 dollars.

[22] The term ''Federal mandate'' means a Federal intergovernmental mandate or a Federal private sector mandate. *See* 2 U.S.C. 658(5) and (6) (defining a federal intergovernmental mandate as, *inter alia,* a regulation that imposes an enforceable duty upon State, local, or tribal governments, except for a duty arising from participation in a voluntary Federal program); 2 U.S.C. 1502(1).

### E. Small Business Regulatory Enforcement Fairness Act of 1996 (Congressional Review Act)

This rule does not fall within the definition of ''rule'' as defined by the Congressional Review Act (CRA), enacted as part of the Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA) by section 804 of SBREFA, Public Law 104–121, 110 Stat. 847–873. *See* 5 U.S.C. 804(3)(C) (defining the term ''rule'' to exclude ''any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties''). DHS is nonetheless submitting this rule to both houses of Congress and the Comptroller General before the rule takes effect, as required by 5 U.S.C. 801(a)(1).

### F. Executive Order 13132 (Federalism)

This rule does not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, Federalism, the Department of Homeland Security has determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

### G. Executive Order 12988 (Civil Justice Reform)

This rule was drafted and reviewed in accordance with Executive Order 12988, Civil Justice Reform. This rule was written to provide a clear legal standard for affected conduct and was reviewed carefully to eliminate drafting errors and ambiguities, so as to minimize litigation and undue burden on the Federal court system. DHS has determined that this rule meets the applicable standards provided in section 3 of Executive Order 12988.

### H. Family Assessment

DHS has reviewed this rule in line with the requirements of section 654 of the Treasury General Appropriations Act, 1999, Public Law 105–277, 112 Stat. 2681 (1998). DHS has systematically reviewed the criteria specified in section 654(c)(1), by evaluating whether this regulatory action: (1) impacts the stability or safety of the family, particularly in terms of marital commitment; (2) impacts the authority of parents in the education, nurture, and supervision of their children; (3) helps the family perform its functions; (4) affects disposable

income or poverty of families and children; (5) only financially impacts families, if at all, to the extent such impacts are justified; (6) may be carried out by State or local government or by the family; or (7) establishes a policy concerning the relationship between the behavior and personal responsibility of youth and the norms of society. If the agency determines a regulation may negatively affect family well-being, then the agency must provide an adequate rationale for its implementation.

DHS has determined that the implementation of this regulation will not negatively affect family well-being and will not have any impact on the autonomy and integrity of the family as an institution.

*I. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)*

This rule does not have Tribal implications under Executive Order 13175, Consultation and Coordination with Indian Tribal Governments, because it will not have a substantial direct effect on one or more Indian Tribes, on the relationship between the Federal Government and Indian Tribes, or on the distribution of power and responsibilities between the Federal Government and Indian Tribes.

*J. National Environmental Policy Act (NEPA)*

DHS and its components analyze regulatory actions to determine whether the National Environmental Policy Act (NEPA), 42 U.S.C. 4321 *et seq.,* applies and, if so, what degree of analysis is required. DHS Directive 023–01 Rev. 01 ''Implementation of the National Environmental Policy Act'' (Dir. 023–01 Rev. 01) and Instruction Manual 023–01–001–01 Rev. 01 (Instruction Manual) [23] establish the policies and procedures that DHS and its components use to comply with NEPA.

NEPA allows Federal agencies to establish, in their NEPA implementing procedures, categories of actions (''categorical exclusions'') that experience has shown do not, individually or cumulatively, have a significant effect on the human environment and, therefore, do not require an environmental assessment or environmental impact statement.[24] The Instruction Manual, Appendix A lists the DHS Categorical Exclusions.[25]

---

[23] The Instruction Manual contains DHS's procedures for implementing NEPA and was issued November 6, 2014, *https://www.dhs.gov/ocrso/eed/epb/nepa* (last visited April 23, 2025).

[24] *See* 42 U.S.C. 4336(a)(2), 4336(1).

[25] *See* Instruction Manual, Appendix A, Table 1.

Under DHS NEPA implementing procedures, for an action to be categorically excluded, it must satisfy each of the following three conditions: (1) The entire action clearly fits within one or more of the categorical exclusions; (2) the action is not a piece of a larger action; and (3) no extraordinary circumstances exist that create the potential for a significant environmental effect.[26]

This rule is limited to amending DHS regulations to codify certain law enforcement authorities delegated by the Secretary of Homeland Security to USCIS through the Director of USCIS, which is a rule of agency organization, procedure, and practice. DHS has reviewed this rule and finds that no significant impact on the environment, or any change in environmental effect will result from the amendments being promulgated in this rule.

Accordingly, DHS finds that the promulgation of this rule's amendments to current regulations clearly fits within categorical exclusion A3 established in DHS's NEPA implementing procedures as an administrative change with no change in environmental effect, is not part of a larger Federal action, and does not present extraordinary circumstances that create the potential for a significant environmental effect.

*K. Paperwork Reduction Act*

Under the Paperwork Reduction Act of 1995, 44 U.S.C. 3501–12, all agencies are required to submit to OMB, for review and approval, any reporting requirements inherent in a rule. This rule does not impose any reporting or recordkeeping requirements under the Paperwork Reduction Act.

**List of Subjects in 8 CFR Part 287**

Immigration, Law enforcement officers.

Accordingly, DHS amends part 287 of chapter I of title 8 of the Code of Federal Regulations as follows:

**PART 287—FIELD OFFICERS; POWERS AND DUTIES**

■ 1. The authority citation for part 287 continues to read as follows:

**Authority:** 8 U.S.C. 1103, 1182, 1225, 1226, 1251, 1252, 1357; Homeland Security Act of 2002, Pub. L. 107–296 (6 U.S.C. 1, *et seq.*); 8 CFR part 2.

■ 2. Section 287.1 is amended by revising paragraphs (e) and (g) to read as follows:

**§ 287.1   Definitions.**

\*      \*      \*      \*      \*

---

[26] Instruction Manual at V.B(2)(a) through (c).

(e) *Law enforcement or other official.* The phrase *law enforcement official (or other official),* as used in section 287(d) of the Act, means an officer or employee of an agency engaged in the administration of criminal justice pursuant to statute, executive order, or delegation by the Secretary, including

(1) Courts;

(2) A government agency or component which performs the administration of criminal justice as defined in 28 CFR part 20 including performance of any of the following activities: detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders.

\*      \*      \*      \*      \*

(g) *Basic immigration law enforcement training.* The phrase basic immigration law enforcement training, as used in §§ 287.5 and 287.8, means the successful completion of one of the following courses of training provided at the Immigration Officer Academy or Border Patrol Academy: Immigration Officer Basic Training Course after 1971; Border Patrol Basic Training Course after 1950; Immigration Detention Enforcement Officer Basic Training Course after 1977; and Immigration Customs Enforcement Special Agent Training, after 2002; or training substantially equivalent thereto as determined by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS with respect to personnel in their respective bureaus. The phrase basic immigration law enforcement training also means the successful completion of the Other than Permanent Full-Time (OTP) Immigration Inspector Basic Training Course after 1991 in the case of individuals who are OTP immigration inspectors. Conversion by OTP immigration to any other status requires training applicable to that position.

\*      \*      \*      \*      \*

■ 3. Section 287.2 is revised to read as follows:

**§ 287.2   Disposition of criminal cases.**

Whenever a special agent in charge, port director, chief patrol agent, or supervisory law enforcement official designated by the Director of USCIS has reason to believe that there has been a violation punishable under any criminal provision of the immigration and nationality laws administered or enforced by the Department, he or she shall immediately initiate an investigation to determine all the pertinent facts and circumstances and

shall take such further action as he or she deems necessary. In no case shall this investigation prejudice the right of an arrested person to be taken without unnecessary delay before a United States magistrate judge, a United States district judge, or, if necessary, a judicial officer empowered in accordance with 18 U.S.C. 3041 to commit persons charged with offenses against the laws of the United States.

■ 4. Section 287.5 is amended by revising paragraphs (c)(3)(vii), (c)(4)(ii)(G), (c)(4)(iii), (c)(5)(ii)(G), (e)(1)(viii), (e)(3)(viii), (e)(4)(viii), and (f)(8) to read as follows:

### § 287.5   Exercise of power by immigration officers.

*    *    *    *    *

(c) * * *

(3) * * *

(vii) Immigration officers who need the authority to arrest persons under section 287(a)(5)(A) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

(4) * * *

(ii) * * *

(G) Immigration officers who need the authority to arrest persons under section 287(a)(5)(B) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

(iii) Notwithstanding the authorization and designation set forth in paragraph (c)(4)(ii) of this section, no immigration officer is authorized to make an arrest for any felony under the authority of section 287(a)(5)(B) of the Act until such time as he or she has been certified as successfully completing a training course encompassing such arrests and the standards for enforcement activities are defined in § 287.8. Such certification will be valid for the duration of the immigration officer's continuous employment, unless it is suspended or revoked by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS, or their respective designees, for just cause.

(5) * * *

(ii) * * *

(G) Immigration officers who need the authority to arrest persons under section 274(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP,

the Assistant Secretary/Director of ICE, or the Director of USCIS.

*    *    *    *    *

(e) * * *

(1) * * *

(viii) Immigration officers who need the authority to execute search warrants under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

*    *    *    *    *

(3) * * *

(viii) Immigration officers who need the authority to execute arrest warrants for immigration violations under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

(4) * * *

(viii) Immigration officers who need the authority to execute warrants of arrest for non-immigration violations under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

(f) * * *

(8) Immigration officers who need the authority to carry firearms under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

■ 5. Section 287.8 is amended by revising paragraphs (a)(1)(iv)(H), (a)(2)(iii)(H), (e)(2)(v), and (f)(1) to read as follows:

### § 287.8   Standards for enforcement activities.

(a) * * *

(1) * * *

(iv) * * *

(H) Immigration officers who need the authority to use non-deadly force under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

(2) * * *

(iii) * * *

(H) Immigration officers who need the authority to use deadly force under

section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

*    *    *    *    *

(e) * * *

(2) * * *

(v) Immigration officers who need the authority to initiate a vehicular pursuit in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of USCIS.

(f) * * *

(1) Site inspections are Department of Homeland Security activities undertaken to locate and identify aliens illegally in the United States, or aliens engaged in unauthorized employment, at locations where there is a reasonable suspicion, based on articulable facts, that such aliens are present.

*    *    *    *    *

■ 6. Section 287.9 is amended by revising paragraphs (a) and (b) introductory text to read:

### § 287.9   Criminal search warrant and firearms policies.

(a) A search warrant should be obtained prior to conducting a search in a criminal investigation unless a specific exception to the warrant requirement is authorized by statute or recognized by the courts. Such exceptions may include, for example, the consent of the person to be searched, exigent circumstances, searches incident to a lawful arrest, and border searches. The Commissioner of CBP, the Assistant Secretary of ICE, and the Director of USCIS shall promulgate guidelines governing officers' conduct relating to search and seizure.

(b) In using a firearm, an immigration officer shall adhere to the standard of conduct set forth in § 287.8(a)(2). An immigration officer may carry only firearms (whether Department issued or personally owned) that have been approved pursuant to guidelines promulgated by the Commissioner of CBP, the Assistant Secretary of ICE, and the Director of USCIS. These officials shall promulgate guidelines with respect to:

*    *    *    *    *

**Kristi Noem,**

*Secretary, U.S. Department of Homeland Security.*

[FR Doc. 2025–16978 Filed 9–4–25; 8:45 am]

**BILLING CODE 9111–97–P**